**Robert A. CASARES, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01-85-0829-CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 12, 1986.

Bobbi L. Blackwell, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Calvin A. Hartman, Cathy Herasimchuk, Harris Co. Asst. Dist. Atty., Houston, for appellee.

Before DUGGAN, LEVY and HOYT, JJ.

**OPINION**

DUGGAN, Justice.

A jury found appellant guilty of the offense of theft of a motor vehicle of a value of over $750 and under $20,000, found the enhancement paragraph of the indictment to be true, and assessed punishment at

eight years confinement and a $1,000 fine. He asserts three grounds of error on appeal.

Appellant urges in his first ground of error that the trial court committed reversible error by failing to allow defense counsel to fully cross-examine the State's witnesses, thereby violating his constitutional right to confrontation of witnesses against him.

A 1973 Chevrolet Suburban truck owned by Victor Boulas was taken for repairs to Molina's Radiator Shop, owned by Ladiaslado Molina. Later, Molina reported the truck to police as stolen on May 17, 1985. On May 19, 1985, appellant, a former employee of Molina, was arrested in Galveston after wrecking the truck.

Although appellant had worked for Molina until the day of the theft, and had earlier gone with him to pick up the truck from Boulas for the repairs, he presented an alibi defense in which he testified that he had borrowed the truck from a person named Mark, who had picked him up when he was hitchhiking. He testified that he was visiting his ex-wife and son in Lufkin on the day of the theft, and that he got there also by hitchhiking.

The indictment charging appellant with theft of a motor vehicle alleged in pertinent part that the truck had a value of over $750 and under $20,000; accordingly, the actual value of the truck at the time of the theft was an essential element of the State's case.

Appellant argues that his attorney was prevented from cross-examining one State's witness, Molina, about the vehicle's value and from fully cross-examining Boulas, the truck's owner, regarding the vehicle's value. Appellant's attorney elicited on cross-examination of Molina that the truck was extensively rusted, and might require as much as $300 worth of repairs for rust damage. Appellant's attorney, Mr. Occie Tate, later asked:

Q: MR. TATE: Mr. Molina, how much money would you pay for Mr. Boulas' truck?

MS. HERASIMCHUK [the prosecutor]: Object to that. Totally irrelevant.

THE COURT: Sustained.

Q: Mr. Molina, you work on cars all the time, right?

A: Yeah, but—

Q: You know a good car and a bad car, right?

A: Yes.

Q: You know if a car is worth much money or little money, right?

A: Yeah.

Q: Boulas' truck, is it worth much money or little money?

MS. HERASIMCHUK: I have to object to—

THE COURT: Sustained.

A: Well—

THE COURT: Just a second.

MR. TATE: I am attempting to establish what the value of the truck was. In view of the language problem, I think that's the only way I can get him to answer the question. If he knows what the value of the truck is from his experience in the industry, I think that—

MS. HERASIMCHUK: This is argument to the jury.

MR. TATE: He is competent to testify about this.

THE COURT: That's sustained.

MR. TATE: He works on cars. He doesn't buy them and sell them.

Appellant contends that the trial court committed reversible error by refusing to let him cross-examine Molina as to the fair market value of the truck after this exchange.

Appellant also contests the court's decision to cut off cross-examination of Boulas, the truck's owner, when appellant attempted to elicit from the witness the basis for his personal evaluation of the vehicle's market value. Direct examination by the prosecutor was as follows:

Q [MS. HERASIMCHUK]: Do you know the approximate value of that truck?

A [MR. BOULAS]: Value for me? How about $3000.

Q: How do you know it was worth $3000?

A: What I spend on her. I put new engine, new transmission, new tires, therefore me want $3000.

Q: Had anyone offered to buy your truck?

A: Yes ma'am.

A: When was it someone offered to buy your truck?

A: In May.

Q: How much did they offer to pay?

A: $3,000.

Q: Were you going to sell the truck to that person?

A: Yes Ma'am. We made the deal already.

Q: Is that $3,000 then, is that a value over $750?

A: Yes ma'am.

Q: And is it under $20,000?

A: Yes ma'am.

On cross-examination, appellant's attorney sought to explore the basis for Boulas' statement of value.

Q: Did you buy that truck when it was new?

A: No. I bought it from my brother in 1975? [sic]

Q: How much did you pay for the truck in 1975?

A: I don't know. How much I pay is my problem, not the problem of anybody. Maybe him give me free.

Q: Did he give it to you free?

A: It is between me and my brother. Anybody need not know. I buy it from him.

Q: You have to answer the question. How much did you pay him for it?

A: 45 hundred.

Q: And that was 10 years ago?

A: Yeah.

Q: When you testified, Mr. Boulas, as to the value of this truck being $3,000, that is not necessarily the market value of that truck?

MS. HERASIMCHUK: The owner of a piece of property may testify to its value.

THE COURT: Sustained.

In summary, the testimony as to the physical condition of the truck showed that the 12 to 13–year-old vehicle was, according to repairman Molina, extremely rusty ("falling apart" from rust); that a Galveston police officer testified there was "considerable damage" to the truck, which may have been done either before or during the Galveston accident resulting in appellant's arrest; and that the vehicle was at least partially hand-painted ("it wasn't factory-baked"). As to the market value, the owner, Boulas, testified to having paid $4,500 for the 1973 vehicle in 1975, and to having received an offer ten years later, in May 1985, the same month as the theft, from a buyer to purchase the truck for $3,000, for which he "made the deal already."

The State had the burden of proof as to market value of the truck. The only evidence in the record showing the vehicle's market value to be in excess of $750, such as to make the primary offense a third-degree felony rather than a misdemeanor, was the subjective opinion testimony of the vehicle's owner, Mr. Boulas. The jury's obvious concern as to the adequacy of such minimal though legally sufficient proof of market value of the truck was shown by its written request, during deliberations on guilt or innocence, for a "NADA guide to used cars," which the court denied.

The court's charge to the jury correctly defined "fair market value of property," set out the lesser included offense of theft of property worth over $200 and under $750, and provided separate forms of answer which required the jury to find the appellant guilty, if at all, either of theft of a truck of the value of "over $750 and under $20,000, as charged in the indictment," or theft of a truck of the value of "over $200 and under $750."

 Appellant should have been allowed broad latitude in the examination of both witnesses (particularly Boulas, whose quoted testimony reflects evasiveness and hostility to appellant's attorney). However, appellant's claim of error is based on excluded evidence, and a bill of exception

should have been perfected to show what the testimony of both Molina and Boulas would have been if appellant had been allowed to elicit their answers. Nothing in the record indicates that the trial judge refused to allow appellant's attorney to make a bill of exceptions or that the attorney sought to enter such a bill of record. As stated in *Easterling v. State,* 710 S.W.2d 569 (Tex.Crim.App.1986):

> ... When a defendant contends that his cross-examination of a witness has been unduly limited, nothing is preserved for review unless the record shows by bill of exception or otherwise what questions he wanted to propound and the answers he expected therefrom. Nothing has been preserved for review. *Passmore v. State,* 617 S.W.2d 682 (Tex.Cr.App.1981); *Barnett v. State,* 615 S.W.2d 220 (Tex. Crim.App.1981).

While the record shows several, though not necessarily all, of the questions appellant's counsel sought to ask of the witnesses Molina and Boulas, it fails to show any answers that were excluded. Accordingly, nothing is preserved for review.

Appellant's first ground of error is overruled.

Appellant asserts in his two remaining grounds of error that Tex.Code Crim.Proc. Ann. art. 37.07, sec. 4 (Vernon Supp.1986), requiring the court to give the jury instructions concerning a defendant's eligibility for parole and receipt of good conduct credit, is unconstitutional both because it is a violation of the separation of powers requirement and because it is vague.

■ We note at the outset, however, that the record reflects no trial objection to the portion of the charge here urged as a basis for appeal. The constitutionality of a statute may not be raised on appeal unless the issue was first raised in the trial court. *James v. State,* 635 S.W.2d 653, 655–656 (Tex.App.—Fort Worth [2nd Dist.] 1982, no pet.); *Chaires v. State,* 704 S.W.2d 397 (Tex.App.—Corpus Christi [13th Dist.] 1985, no pet.).

Appellant's second and third grounds are overruled.

The judgment is affirmed.

LEVY and HOYT, JJ., also participating.

HOYT, J., dissenting.

HOYT, Justice, dissenting.

I respectfully dissent for two reasons.

In the first instance, the trial court prevented objective cross-examination of the State's witnesses on the question of value, a necessary element of proof for the State to carry its burden. The appellant objected and preserved the error. I would adhere to that line of cases holding that where the right of confrontation is compromised, no showing of harm is required. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed. 347 (1974); *Zuniga v. State,* 664 S.W.2d 366 (Tex.App.—Corpus Christi 1983, no pet.).

The majority holds that in order to preserve error, the appellant must show by bill of exception what questions he wanted to propound and the answers expected therefrom. They overlook the fact that the record already shows what questions the appellant wanted asked and what answers he anticipated; therefore, no bill of exception was necessary. Furthermore, establishing the value of the vehicle was an essential element of the State's case. If the complainant's testimony cannot stand the test of cross-examination, was there a case in the first instance?

Next, appellant challenges the constitutionality of article 37.07, section 4, Tex. Code Crim.P. (Vernon 1986), which makes mandatory a jury instruction on parole and credits for good conduct time in certain cases.

Article 37.07(4) requires that where punishment is to the jury, the charge must include language set out in the statute relative to the possibilities for parole as well as good conduct time credits. The charge on punishment in this case tracked the statutory provisions verbatim. There was no objection to the charge.

Generally, courts should reach the question of the constitutionality of a statute only if it cannot reverse on another ground. *Smith v. State*, 658 S.W.2d 172, 174 (Tex. Cr.App.1983). Appellant asks in his remaining two grounds of error that the court find that article 37.07(4) Tex.Code Crim.App.1983). Appellant asks in his re-invasion of the judicial and executive power, and that it is unconstitutionally vague.

To show a statute to be unconstitutionally vague and ambiguous, appellant must demonstrate that persons of common intelligence would necessarily guess at its meaning and differ as to its application. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, (1972); *Aheard v. State*, 588 S.W.2d 327, 338 (Tex.Crim.App.1979). A statute that is *so vague* that its application violates the first essential of due process of law is fundamentally defective. *See Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *Passmore v. State*, 544 S.W.2d 399 (Tex.Crim. App.1976); *Baker v. State*, 478 S.W.2d 445 (Tex.Crim.App.1972); *Ex parte Chernosky*, 153 Tex.Crim. 52, 217 S.W.2d 673 (1949). In this instance it is not necessary to preserve a fundamental error by argument or objection to the trial court and the error may be first raised on appeal.

A careful reading of the statute reveals that it is hopelessly ambiguous due to drafting errors.

The charge given to the jury tracks paragraphs from 37.07(4)(a), (b) and (c). Those sections are cross-referenced to article 42.-12 sec. 3f(a)(1) and (a)(2). However, those sections of article 42.12 do not contain the substantive matter referred to in 37.07(4)(b) and (c). Section 3g(a)(1) and (2) and perhaps 3g(b) and (c) contain material in harmony with what should be anticipated on reading 37.07(4)(a), (b) and (c).

I would hold that the drafting defects are sufficiently ambiguous that persons of common intelligence would be required to guess at the meaning and intent of the legislature and could differ in their opinion as to the statute's proper application.

I would reverse the judgment and remand the cause for a new trial with directions to exclude the instructions.