Mackie Lee MOORE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–86–00044–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 15, 1987.

Terrill L. Flenniken, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Roe Morris, John Kyles, Harris Co. Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and WARREN and JACK SMITH, JJ.

## OPINION

WARREN, Justice.

A jury found appellant guilty of murder and assessed his punishment at 35 years confinement in the Texas Department of Corrections.

In three points of error, appellant alleges: (1) that the trial court erred in overruling appellant's objection to the State's misstatement of the law during jury argument; (2) that the trial court erred in unduly restricting appellant's right to conduct voir dire examination; and (3) that the trial court erred by including in the charge on punishment the language mandated by Tex.Code Crim.P.Ann. art. 37.07, § 4 (Vernon Supp.1986) because it is a denial of appellant's right to constitutional due process. We affirm.

On March 14, 1985, Judy Loving and her friend, Joyce Guy, were in the process of moving Judy Loving's personal belongings out of the apartment in which both appellant and Miss Loving had been living. Miss Guy testified that she heard Judy cry for help, and went into the bedroom, where she saw Miss Loving, lying on the floor and bed, and appellant kneeling over her with a knife in his hand. Miss Loving died from stab wounds.

After appellant was arrested and informed of his rights, pursuant to Tex.Code Crim.P.Ann. art. 15.17 (Vernon Supp.1986), he furnished police with a written statement admitting that he believed that he stabbed Judy Loving.

In his first point of error, appellant complains of the following jury argument:

Mr. Kyles [prosecutor]: You will find that as you hear my argument that in some regard I will echo the testimony of Mr. Flenniken who has very ably and oh so smoothly presented virtually the only argument that the evidence left him to argue. He has attempted to, through sifting through the State's evidence, to try and mitigate the facts in favor of the defendant, *hoping that as he led you down a very carefully prepared rabbit trail that you might go astray and find that there was sudden passion and find that it arose from an adequate cause and find that his client should be found guilty not of the charge of murder* —(emphasis added).

Mr. Flenniken [defense counsel]: Excuse me, Mr. Kyles. I am going to object. The jury does not have to find there is sudden passion. Mr. Kyles has the burden of proof beyond a reasonable doubt there was no sudden passion. I object on the basis that it is an incorrect statement of the law by Mr. Kyles.

Mr. Kyles: Your Honor, defense counsel's argument is argumentative. He has not stated a legal objection. I ask not only he be overruled at this time but that he be instructed to refrain from injecting defense argument in the middle of the State's argument.

Mr. Flenniken: My objection is simply that he made an incorrect statement of the law. That's my objection. The State's burden is beyond a reasonable doubt and they must prove beyond a reasonable doubt—

The Court: What was your statement?

Mr. Kyles: I believe it's clear that the duty of the jury is ultimately to sift through the facts and reach their own finding since they serve in the trial as the trier of facts. It is ultimately their responsibility how they want to apply the facts of this case to the law.

Mr. Flenniken: I object to the statement Mr. Kyles is making now as an incorrect statement of the law and an attempt to prejudice this jury and I object to that.

The Court: Overrule the objection. Let's proceed.

■ Jury argument must fall within one of the following four general areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *See Gomez v. State,* 704 S.W.2d 770, 771 (Tex.Crim.App.1985).

In this case, the record shows that the State was answering an argument raised by opposing counsel. Appellant's counsel had earlier said:

> I think after you analyze both of these paragraphs that you will find that if the State has met its burden by showing that a murder took place, assuming that the State has, then I submit to you it was voluntary manslaughter.... Read the evidence that will show there was sudden passion coming basically from two different sources....
>
> You heard Joyce Guy testify that his eyes were red and she testified that he had horns. I don't know what the explanation for that is other than I submit to you that right there is evidence of rage. She even testified of his anger. That's the evidence of that. It's raised there. The State must come back and rebut that. They must prove to you, put on some evidence, put on some evidence to prove to you beyond a reasonable doubt there was no anger. There was no rage. There was no sudden passion; that there was no adequate cause. There is no evidence of that. The State has not done that. They have not brought you any evidence of that. Therefore, I submit to you when you think about this evidence and you go back there and review it that the only two choices that you can logically have after you sift through the evidence and you think about what the State has put on and failed to put on, the only two choices is either voluntary manslaughter or not guilty because the State has put on no evidence to show, no evidence at all to show there was no adequate cause or no sudden passion.

Further, the State's argument, in answer to the defense counsel's earlier remarks, was merely stating that the defense hoped that the jury would find the immediate influence of sudden passion arising from an adequate cause, not that the jury was obligated to find sudden passion arising from an adequate cause before it could find appellant guilty of the less serious offense of voluntary manslaughter.

■ Further, the court's charge correctly instructed the jury regarding the State's burden of proof on murder and voluntary manslaughter. Appellant's first point of error is overruled.

In his second point of error, appellant complains that the trial court erred in "unduly restricting" appellant's right to conduct voir dire examination. Appellant maintains that his counsel was only able to conduct individual voir dire on the first six prospective jurors.

Before voir dire began, the court informed the prosecutor and defense counsel that each would be allowed 45 minutes to conduct their voir dire. The record shows that appellant's attorney questioned and received answers from prospective jurors Andrako, Dugat, Woodring, Patrick, White, Porter, Paris, Clark, Carney, and Lewis concerning whether the respective jurors could consider the full range of punishment that would include probation. The trial court eventually told appellant that he was 15 minutes past his allotted 45 minute time limit.

As appellant's counsel continued to ask the jurors individually whether each could consider probation in a proper case, the trial court told appellant:

> The Court: I am going to allow you to ask the panel that question and have them raise their hands if they have a problem with that particular question rather than individually. If they have a problem with considering the full range of punishment we will take them one by one up by the bench. You may ask your question to the panel as a whole and have those people raise their hands that have a problem and we will take them

one by one up at the bench. I am not going to allow you to go individually and ask each one.

The appellant objected to this procedure, but did ask the question and requested a show of hands. Appellant then again asked that he be allowed to voir dire the prospective jurors individually and informed the court that he could not remember which of the jurors had raised their hands. Appellant demonstrated this by asking prospective juror Kinney to approach the bench, where Kinney informed the court that she had not raised her hand. The trial court urged appellant to proceed with voir dire. Appellant objected to an admonishment allegedly given to him within the hearing of the jury panel. Outside the presence of the jury, the trial court urged the appellant to proceed by asking his questions about probation, getting a show of hands, and discussing the issue at the bench with the individuals. Appellant asked to make a bill of exceptions ("a record or something requesting the court to allow me the opportunity to make a proper objection . . ."). The court then allowed appellant to renew his objection. Appellant merely restated his objection to the admonishment that the court allegedly made to him in front of the jury.

After resuming voir dire, the appellant continued to complain that the trial judge had admonished him within the jury's hearing, and the trial court continued to instruct the appellant to proceed. Almost immediately, appellant requested that the jury be removed, after which he objected to the trial court's alleged admonishment of him. This verbal jousting between the trial court and appellant's counsel continued.

After the jury returned to the courtroom, appellant questioned prospective jurors Clark, Carney, Andrako, and Lewis before the bench on their respective abilities to consider probation. Appellant then struck the aforementioned prospective jurors.

■ The right to be represented by counsel encompasses the right of counsel to question the members of the jury panel in order to intelligently exercise his per-emptory challenges. *Mathis v. State,* 576 S.W.2d 835, 836 (Tex.Crim.App.1979). A trial court may impose reasonable restrictions on the exercise of voir dire examination. *See McManus v. State,* 591 S.W.2d 505, 520 (Tex.Crim.App.1979). These two principles—the right of counsel to question veniremembers and the right of the trial court to control the voir dire and impose reasonable restrictions—coexist and must be harmonized. *Ratliff v. State,* 690 S.W.2d 597, 599 (Tex.Crim.App.1985).

■ In non-capital felony cases, when the court in its discretion so directs, the State and defendant shall conduct the voir dire examination of prospective jurors in the presence of the entire panel. Tex.Code Crim.P.Ann. art. 35.17 (Vernon Supp.1986).

■ In *Ratliff,* 690 S.W.2d at 599, the court was faced with the issue of whether the trial court abused its discretion in setting a one-hour time limitation which it imposed on each party to conduct voir dire. *Id.* at 598, 599. In concluding that the time restraint was unreasonable, the majority members of the court relied upon the seminal case of *La Rosa v. State,* 414 S.W.2d 668, 672 (Tex.Crim.App.1967), where a thirty minute limit on the defendant's voir dire examination was held to be unreasonable, and the subsequent cases of *Whitaker v. State,* 653 S.W.2d 781 (Tex.Crim.App.1983), and *Thomas v. State,* 658 S.W.2d 175 (Tex. Crim.App.1983). *Ratliff,* 690 S.W.2d at 599–600. The court added another factor to the two factors set out in *La Rosa* and enunciated the following three factor test for evaluating the reasonableness of a time limitation: (1) the defendant's voir dire must show that he did not attempt to prolong the voir dire, (2) the defendant must show that he was not permitted to ask proper and relevant questions, and (3) the defendant must show that he was not permitted to examine jurors who served on the jury. *Ratliff,* 690 S.W.2d at 600.

Each case must be examined on its own facts. *Id.* at 600. The record shows that the trial court properly exercised its discretion, under Tex.Code Crim.P.Ann. art. 35.17

(Vernon Supp.1986), in directing that the voir dire examination be conducted in the presence of the entire panel. Although the trial court initially limited each side to 45 minutes to conduct their voir dire examination, the record shows that appellant was allowed more than his allotted time. The record also shows, despite appellant's claim to the contrary in his brief, that appellant at no time requested a bill of exceptions for the purpose of offering a list of questions that he wanted to ask and which he alleged were necessary, relevant, material or not unnecessarily repetitious.

In applying the three factor test set forth in *Ratliff* to the instant case, the record shows: first, when considering the voir dire examination as a whole, the trial court gave appellant's counsel clear instructions on how to proceed and appellant's counsel repeatedly resisted in proceeding as directed. Appellant attempted to prolong voir dire by questioning prospective jurors whom he had questioned earlier and by repeatedly raising the same objection, which had been earlier overruled, concerning an alleged admonishment within the hearing of the jury panel. Second, appellant did not request a bill of exceptions to show that the questions he was not permitted to ask were proper and relevant questions. Appellant's only offer was for the purpose of objecting to the alleged admonishment by the trial court within the hearing of the jury panel. Third, appellant did not show that he was not permitted to examine jurors who served on the jury. Appellant's second point of error is overruled. *Ratliff,* 690 S.W.2d at 600.

Appellant's third point of error asserts that the inclusion of the language from Tex.Code Crim.P.Ann. art. 37.07, § 4 (Vernon Supp.1986), to which he objected, is unconstitutional because it violates his right to due process.

Section 4 of Article 37.07 authorizes the following charge, which was submitted to the jury:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Appellant complains of the last two paragraphs of the statute on appeal.

First, we note that appellant has cited no authority other than to assert the legal conclusion that the charge violates due process and equal protection as guaranteed by the United States Constitution and the Texas Constitution. Without citing any case authority, appellant asserts that the language from Section 4 of Article 37.07 is confusing, contradictory, causes the jury to

speculate on matters not in evidence, denies counsel the opportunity to present evidence on an issue that is placed before the jury, and further denies due process by restricting appellant's right to effective representation of counsel as guaranteed by United States Const. amend. VI and Tex. Const. art. I, § 10. We disagree.

In *California v. Ramos*, 463 U.S. 992, 1014, 103 S.Ct. 3446, 3460, 77 L.Ed.2d 1171 (1983), a capital sentencing case, a jury instruction that informed the jury that a sentence of life imprisonment without the possibility of parole may be commuted by the Governor to a sentence that included the possibility of parole was held to be not prohibited by the eighth and fourteenth amendments to the United States Constitution. The Supreme Court rejected the suggestion that the instruction was irrelevant to the sentencing decision and too speculative an element for the jury's consideration. *Id.* at 1011–1012, 103 S.Ct. at 3458–3459.

In *Casares v. State*, 712 S.W.2d 818 (Tex. App.—Houston [1st Dist.], pet. pending), the appellant argued that Tex.Code Crim.P. Ann. art. 37.07, § 4 (Vernon Supp.1986) is unconstitutionally vague. Our Court held that since appellant failed to object at trial, the constitutionality of a statute may not be raised on appeal. *Id.* at 821. (Note also Judge Hoyt's dissent).

In the instant case, appellant objected to the charge at trial. The State argues that the charge was not vague under *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), since persons of common intelligence would not necessarily guess at its meaning and differ as to its application. *Id.* at 162, 92 S.Ct. at 843. The charge explains the parole law and then states that it cannot be predicted how this law might be applied to this particular defendant. Since the appellant had not yet begun to serve his sentence, then logically it cannot accurately be predicted how the parole law and good conduct time might be applied to this appellant. While the charge acknowledges the existence of the parole law and good conduct time, the jury, if it followed the directive to not consider the manner in which the parole law may be applied to this appellant, would not have to guess as to its meaning. Appellant's third point of error is overruled.

Affirmed.