**In the Matter of D.W., a Juvenile.**

**No. 09–95–288CV.**

Court of Appeals of Texas, Beaumont.

Nov. 14, 1996.

Rehearing Overruled Jan. 9, 1997.

Dennis Powell, Orange, for appellant.

John Kimbrough, County Attorney, Doneane Beckcom, Assistant County Attorney, Orange, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

At age fifteen, Appellant, D.W., shot B.M. to death while in the course of robbing B.M. Appellant entered a plea of true to capital murder. On June 23, 1993, the trial court gave Appellant a forty year sentence and committed him to custody of the Texas Youth Commission. On May 25, 1995, the trial court entered an order transferring Appellant into the custody of the Texas Department of Criminal Justice, Institutional Division, to serve the remainder of his forty year sentence. Appellant raises five points of error.

Point of error one urges: "The Trial Court Erred in Including an Affirmative Finding of a Deadly Weapon in the Order of Transfer." The State must give notice in some form of its intention to seek an affirmative finding of the use of a deadly weapon. *Ex parte Patterson*, 740 S.W.2d 766 (Tex. Crim.App.1987), *modified by, Ex parte Beck*, 769 S.W.2d 525 (Tex.Crim.App.1989). In *Luken v. State*, 780 S.W.2d 264 (Tex.Crim.

App.1989), the Court of Criminal Appeals held the accused could challenge the notice of a deadly weapon finding for the first time on appeal. Unlike the criminal process applied in prosecutions of adults, the determinate sentencing scheme has a two-phase process which may result in two appeals. The affirmative finding is made at the first, dispositional phase of the proceeding. TEX. FAM. CODE ANN. § 54.04(g) (Vernon 1996). The trial court's 1993 judgment and order of commitment recited Appellant "exhibited and used a deadly weapon, to wit: a firearm during the commission of the offense...." The Order of Transfer noted the Judgment and Order of Commitment included the deadly weapon finding. Appellant argues the State did not provide adequate notice of its intention to seek an affirmative finding of the use of a deadly weapon by including a deadly weapon allegation in a written pleading filed prior to the disposition hearing.

Appellant did not perfect an appeal from his commitment to the Texas Youth Commission, nor does he include the statement of facts of the disposition hearing in the record of this appeal. Disposition orders and transfer orders are separately appealable. TEX. FAM.CODE ANN. § 56.01(c)(1)(B) & (c)(2) (Vernon 1996). Appellant argues the issue of whether the State gave him sufficient notice of its intention to seek an affirmative finding was not ripe for adjudication until the possibility of his incarceration became a certainty. Appellant relies upon the treatment afforded points raised in two appeals from disposition orders: *Matter of D.S.*, 833 S.W.2d 250 (Tex. App.—Corpus Christi 1992, writ denied), and *Matter of S.B.C.*, 805 S.W.2d 1 (Tex.App.— Tyler 1991, writ denied). S.B.C. challenged the constitutionality of the determinate sentencing scheme because he *might* be incarcerated longer than an adult would be. *Id.* at 6. The appellate court held the issue was premature in an appeal from a disposition order, as S.B.C. might be released following the transfer hearing which had not yet occurred, in which case he would not be incarcerated longer than a similarly situated adult would be. *Id.* Likewise, D.S. challenged the constitutionality of the determinate sentencing scheme based upon the mere unrealized potential for punishment in violation of the

state and federal constitutions. *D.S.*, 833 S.W.2d at 252. The court of appeals held the "potential for impropriety" presented nothing for review until such time as the court ordered the appellant's transfer to the Texas Department of Criminal Justice, Institutional Division. The court *did* address D.S.'s argument that the trial court erred in allowing him to be sentenced under the determinate sentencing statutes because the certification to the court of grand jury approval was not in the case file at the time trial commenced. *Id.* at 251.

The issue in this case is analogous to the issue of the absent certification in *D.S.* The certification, together with the petition, is the juvenile procedural equivalent of an indictment. The absence of such a certification was reviewable in the appeal from the commitment order. In our case, Appellant urges the trial court erred in including the affirmative finding recital in the transfer order because of a *procedural defect* in the *disposition phase of the proceedings*. He is not challenging the constitutionality of the determinate sentencing statutes. There was nothing speculative or conditional about the affirmative finding when the trial court adjudicated Appellant to be delinquent. Although Appellant did not have to preserve the issue by written motion filed before the day of the disposition hearing, once the affirmative finding was included in the commitment order nothing prevented him from exercising his right to appeal in order to challenge the trial court's decision to include the finding in the order. The forty year sentence might not be served, either, but both the sentence and the affirmative finding are matters which have been raised and considered in appeals from commitment orders. *See, In Matter of S.L.L.*, 906 S.W.2d 190 (Tex.App.—Austin 1995, no writ); *Matter of A.F.*, 895 S.W.2d 481 (Tex.App.—Austin 1995, no writ). Even defects of constitutional dimension may be waived. *Ex parte Crispen*, 777 S.W.2d 103 (Tex.Crim.App. 1989); *Little v. State*, 758 S.W.2d 551 (Tex. Crim.App.), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). A lack of notice would be reversible error, but would not render the judgment itself void. *Patter-*

*son,* 740 S.W.2d at 778. Appellant raises matters which relate to the earlier, appealable proceeding in the subsequent appeal of the transfer order. *Matter of T.C.K.Jr.,* 877 S.W.2d 43, 44 (Tex.App.—Beaumont 1994, no writ). Appellant cannot attack the disposition order in the later appeal of the transfer order.

Here, the trial court included an affirmative finding of the use of a deadly weapon in its unappealed disposition order. The transfer order includes a recital that the 1993 commitment includes an affirmative finding of the use of a deadly weapon. It was not error for the transfer order to include this recital, as the record reflects the recital is correct. Appellant certainly had written notice of the State's intention to seek a deadly weapon finding prior to the entry of the transfer order, because the disposition order included such a finding. Point of error one is overruled.

■ Point of error two urges: "The Trial Court Erred in Refusing to Dismiss the Action and Release the Juvenile Respondent in Response to the Intentional Destruction of Exculpatory Evidence by the Texas Youth Commission." In the course of deposing the assistant superintendent of the Giddings State Home and School, Appellant's counsel discovered that reports prepared by members of the special services committee were shredded after the committee made its recommendation to the trial court.[1] The trial court granted Appellant's motion to strike the recommendation, but denied Appellant's motion to dismiss the prosecution.

The State's suppression of exculpatory evidence violates due process irrespective of the good or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Although the loss or destruction of evidence can deny a criminal defendant due process of law, the duty to preserve evidence is limited to evidence that possesses an exculpatory value

that was apparent before the evidence was destroyed. *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984). Absent bad faith, the mere failure to preserve potentially useful evidence does not of itself result in the denial of due process. *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). We must examine the totality of circumstances to determine whether the loss resulted in a trial so lacking in fairness as to deny due process. *Ex parte Brandley,* 781 S.W.2d 886, 892 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 817, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990). A criminal defendant must show that the evidence was lost or destroyed by the State after a request therefore, the evidence was favorable to the defendant, and the evidence was material. *Nastu v. State,* 589 S.W.2d 434, 441 (Tex.Crim.App. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

The State is accused of having failed to preserve evidence, as opposed to having maintained any undisclosed evidence in its possession, so the *Brady* standard does not apply. *Williams v. State,* 906 S.W.2d 58, 61 (Tex.App.—Tyler 1995, pet. ref'd). In order to meet the *Trombetta* standard, the exculpatory value of the lost evidence must have been obvious at the time of its destruction, and the accused must be unable to find comparable evidence. Appellant argues the documents must have been material because the assistant superintendent admitted they shredded the reports so they would not be available to the defendant. Such a conclusion does not necessarily follow, especially when the assistant superintendent's admission is read in its context, as the document destruction is a standard operating procedure, not a unique occurrence. Furthermore, the contributing professionals' input is contained in Appellant's file, incorporated into the recommendation, and available through deposition. Appellant does not meet

---

1. The assistant superintendent stated: "We shredded them because we don't want to ever get into a situation where people attempt to pick and choose who will carry the Texas Youth Commission's recommendation and that occasionally we've had situations where staff members have made recommendations which were based on—I

won't say what they were based on, but we don't want you to pick who is going to be our representative. We don't want you necessarily to have access to those records to show them." He also related the interview form was destroyed but the professionals' input remained in the file, and they had followed this procedure for years.

the *Trombetta* standard for failure to preserve exculpatory evidence. Appellant argues he has met the *Youngblood* standard for failure to preserve potentially useful information, as he established bad faith on the part of the Giddings School. The assistant superintendent admitted the Commission did not want the destroyed documents to be available to the litigants. We must keep in mind, however, that although according to the superintendent particular documents were destroyed, the professionals' input was contained in the file. The State is not required to preserve exculpatory or mitigating evidence in any particular form. *San Miguel v. State*, 864 S.W.2d 493, 495 (Tex.Crim.App. 1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1337, 127 L.Ed.2d 685 (1994).

The trial court did not make written findings of fact and conclusions of law, so we do not know the basis for the trial court's ruling. Appellant has not shown that the lost evidence was demonstrably favorable to him and unavailable from another source. The trial court might have found the potentially useful information was not lost, or that the state agent did not act in bad faith because the evidence was memorialized in some form. It is also possible that the trial court *did* find bad faith on the part of the Commission. Recall that the trial court *granted* Appellant's motion to strike the Commission's recommendation. Due process was satisfied by excluding the (presumably negative) recommendation. Even in cases where the State intentionally suppresses exculpatory evidence, the evidence is not necessarily inadmissible, nor is the State barred from proceeding. *Brandley*, 781 S.W.2d at 894, n. 9. Point of error two is overruled.

Point of error three contends: "The Trial Court Erred in Denying the Juvenile Respondent's Request for an Expert Witness." Appellant cites no authority whatsoever in support of his point of error. We decline to review the point of error, as the point is inadequately briefed. TEX.R.APP. P. 74(f). *M.A.V., Jr. v. Webb County Court at Law*, 842 S.W.2d 739 (Tex.App.—San Antonio 1992, writ denied); *Matter of F.A.*, 835 S.W.2d 748, 750 (Tex.App.—San Antonio 1992, no writ). Point of error three is overruled.

The fourth point of error urges abuse of discretion in the trial court's decision to transfer Appellant to the Texas Department of Criminal Justice, Institutional Division. Any relevant matter may be considered by the trial court, including the experiences and character of the youth before and after his commitment to the youth commission, the nature of the penal offense and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim and the victim's family, the recommendation of the prosecution and the commission, and the best interests of the youth. TEX. FAM.CODE ANN. § 54.11(k) (Vernon 1996). Appellant presented evidence from caseworkers who testified Appellant had made significant progress while residing in the State School. One Giddings employee noted Appellant had excellent group skills and was working on his "issues" and "thinking errors." This same deponent agreed that the amount of parole supervision which would be available for D.W. was probably insufficient. Appellant had a significant juvenile history of criminal and anti-social behavior. The trial court heard Appellant's description of how he emptied a gun into B.M. and then drove around town looking for more victims. The trial court also considered testimony from the police officers who investigated the offense and from the victim's family, from which the judge may have concluded that if released Appellant would be likely to reoffend. While there is evidence in the record that Appellant had worked towards rehabilitating himself, the court was also presented with evidence that Appellant might be feigning sincerity in order to avoid transfer to the institutional division. So long as the trial court does not act arbitrarily or with disregard for guiding principles, we will not disturb its decision to transfer the juvenile to the Texas Department of Criminal Justice, Institutional Division, upon reaching age eighteen. *K.L.M. v. State*, 881 S.W.2d 80 (Tex.App.—Dallas 1994, no writ); *Matter of J.C.D.*, 874 S.W.2d 107, 109 (Tex.App.—Austin 1994, no writ). After reviewing the entire record, we conclude the trial court did not err in deciding to transfer

Appellant to the adult penal system. Point of error four is overruled.

■ The final point of error urges the trial court erred in considering psychological records and testing of Appellant. The trial court denied Appellant's pre-trial "Motion to Strike TYC Report and Recommendation" based upon TEX.R. CIV. EVID. 510 and the confidentiality of mental health information, but *granted* a separate pre-trial "Motion to Strike Report, Testimony and Recommendation" as discussed in our consideration of point of error two. At trial, the State asked the trial court to take judicial notice of the court's file in this cause, including "all documents that were submitted by the Texas Youth Commission prior to this hearing with the exception of the summary report and recommendation which was stricken...." Defense counsel did not object to the court taking judicial notice, but did object "to the records in toto to the extent that they constitute hearsay." Counsel further objected to the waiver of confidentiality "based on the Fifth Amendment right—privilege against self-incrimination in the United States Constitution and based on the Sixth Amendment right to counsel, based on the Texas Constitutional Provision providing that a defendant is not required to give evidence against himself and based on the Texas Constitutional Provision of right to counsel." The trial court agreed to take judicial notice of the documents but did not rule on Appellant's other oral objections.

Appellant first challenges the reports based upon the rule of civil evidence for confidentiality of mental health information. TEX.R. CIV. EVID. 510. Appellant concedes Appellant's authorization is contained in the records but argues the signature was not authenticated by any testimony. No authority is cited in support of his argument. He next challenges the records because "the juvenile respondent was not advised of his Miranda rights prior to granting the psychological interview", but he does not inform this court where in the record it was established that Appellant was not advised of his rights under the Fifth Amendment prior to the interview. Appellant also argues consideration of such records: 1) violated his federal constitutional right to counsel; 2) violated his state constitutional right to not give evidence against himself; 3) violated his state constitutional right to counsel; and 4) violated his right to counsel under the Texas Family Code. Appellant cites this Court to no authority other than Texas Rule of Civil Evidence 510, the Fifth Amendment to the United States Constitution, the "United States Constitution", the "Texas Constitution", and the "Texas Family Code." He does not produce any argument or authority in support of a challenge to the constitutionality of the statute which expressly provides the trial court may consider the written reports. TEX. FAM.CODE ANN. § 54.11(d) (Vernon 1996). Appellant presents multifarious arguments under a single point of error without separating state and federal constitutional arguments or citing any case authority for his arguments. We find this point to be inadequately briefed. TEX.R.APP. P. 74(f). As submitted, it presents no error for review. Point of error five is overruled.

We find no reversible error in the proceedings below. The judgment of the trial court, ordering Appellant's transfer to the Texas Department of Criminal Justice, Institutional Division, is affirmed.

AFFIRMED.