745 P.2d 141

**STATE of Arizona, Appellee,**

v.

**Martley Leroy HOLDER, Appellant.**

**No. CR–87–0104–PR.**

Supreme Court of Arizona,
En Banc.

Oct. 15, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Paul J. McMurdie, Asst. Attys. Gen., Phoenix, for appellee.

John M. Antieau, Phoenix, for appellant.

MOELLER, Justice.

## FACTS AND ISSUES

Defendant Martley LeRoy Holder was charged with theft by knowingly possessing a stolen pickup truck. At trial, he represented himself with the aid of court-appointed advisory counsel. After voir dire examination of the jury panel, both the prosecutor and the defendant passed the panel. After the court discharged the excess jurors from the panel, each side exercised six peremptory challenges, leaving ten jurors on the panel. Without objection, those ten were sworn in as trial jurors. At the end of the trial, two alternates were selected by lot and excused without objection. The remaining eight jurors returned a verdict of guilty. The defendant then admitted two prior convictions which had been alleged by the state. At sentencing, he received an aggravated sentence.

After his conviction and sentencing, the United States Supreme Court announced its decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In that opinion, the Court held that a criminal defendant could use the facts and circumstances of his individual case to make a prima facie showing that the state was violating his equal protection rights by using peremptory challenges. systematically to exclude members of the defendant's race from the jury. 476 U.S. at 96–97, 106 S.Ct. at 1722–23, 90 L.Ed.2d at 87. In his appeal to the court of appeals, defendant contended that he was entitled to raise *Batson* for the first time on appeal, that *Batson* applied to his case, and that the record established a prima facie showing of the discriminatory exercise of peremptories. The court of appeals agreed with the defendant and remanded to the trial court for a hearing to determine whether the prosecution could now meet its burden of providing a racially neutral explanation for the exercise of its peremptory challenges. *State v. Holder*, 155 Ariz. 80, 745 P.2d 138 (App.1987).

The state petitioned this court for review, and the defendant cross-petitioned. We accepted review of two issues raised in the state's petition:

1) Whether the court of appeals erred by concluding that a *Batson* claim can be raised for the first time on appeal; and

2) Whether the court of appeals erred by concluding that the record on appeal demonstrated a *prima facie* case of prosecutorial discrimination under *Batson.*

We have jurisdiction under Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24. Since we arrive at different conclusions than did the court of appeals, we vacate

those portions of its opinion dealing with *Batson* issues.

## RETROACTIVITY AND FAILURE TO OBJECT AT TRIAL

■ The question of whether a constitutional principle is "retroactive" is a question distinct from the question of whether a defendant must timely assert the principle in order to receive its benefits. While the Supreme Court has twice considered the retroactivity of *Batson*, it has not considered whether a defendant may successfully raise a *Batson* issue for the first time on appeal. Addressing retroactivity, the Court held in *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), that *Batson* was not available to defendants whose direct appeals were final at the time *Batson* was announced. In *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Court held, again addressing the issue of retroactivity, that *Batson* applied to defendants whose appeals had not become final by the time of the *Batson* decision.[1] When the instant case was being briefed in the court of appeals, *Griffith* had not yet been decided, and the state urged in its brief that *Batson* should not be applied retroactively. The court of appeals correctly noted that the retroactivity issue was settled by *Griffith*. Since the defendant here falls within the *Griffith* ambit, the question then becomes whether he should be permitted to raise the *Batson* issue for the first time on appeal. The court of appeals held that he could do so. We disagree.

■ Absent fundamental error, error is usually considered to be waived on appeal unless it was objected to at trial. *State v. Henley*, 141 Ariz. 465, 687 P.2d 1220 (1984). This principle also applies to constitutional error. *See State v. Magallanes*, 110 Ariz. 235, 517 P.2d 505 (1973). Only fundamental error, that is, error which goes to the very foundation of the case, may be raised for the first time on appeal. *State v. Burton*, 144 Ariz. 248, 697 P.2d 331 (1985).

In considering whether a *Batson* issue may be raised for the first time on appeal, we note first that the ruling in *Batson* itself was that the requirement of a racially neutral explanation from the prosecutor was triggered by a timely objection in the trial court. The defendants in both *Allen* and *Griffith* had also made timely objections, although the *Batson* case had not yet been decided. *Allen*, 478 U.S. at ——, 106 S.Ct. at 2879, 92 L.Ed.2d at 203; *Griffith*, 479 U.S. at ——, 107 S.Ct. at 710, 711, 93 L.Ed.2d at 654–655.

While the Court has not directly addressed the issue of *Batson* as fundamental error, in discussing the retroactivity issue, the Court in *Allen* stated:

> Significantly, the new [*Batson*] rule joins other procedures that protect a defendant's interest in a neutral factfinder. Those other mechanisms existed prior to our decision in *Batson*, creating a high probability that the individual jurors seated in a particular case were free from bias. Accordingly, *we cannot say that the new rule has such a fundamental impact on the integrity of factfinding as to compel retroactive application.*

478 U.S. at ——, 106 S.Ct. at 2881, 92 L.Ed.2d at 205 (emphasis added).

■ At least one federal circuit court has noted this passage and held that a *Batson* challenge does not involve fundamental error and is waived if a timely objection is not made. *Virgin Islands v. Forte*, 806 F.2d 73, 76–77 (3d Cir.1986). *See also United States v. Erwin*, 793 F.2d 656, 667 (5th Cir.1986). In addition, several state appellate courts have held that a *Batson* challenge must be made in a timely fashion or it is waived. *Ford v. State*, 180 Ga.App. 807, 350 S.E.2d 816 (1986); *People v. Holder*, 153 Ill.App.3d 884, 106 Ill.Dec. 700, 506 N.E.2d 407 (1987); *Weekly v. State*, 496 N.E.2d 29 (Ind.1986). We conclude that a *Batson* issue does not present fundamental error and a failure to raise it cannot be excused on that ground.

---

1. We note that Division II of the Arizona Court of Appeals reached the opposite result in *State v. Dogan*, 150 Ariz. 595, 724 P.2d 1264 (App. 1986), which was decided before *Griffith*.

■ However, our holding that fundamental error is not involved does not end our inquiry. The court of appeals did not hold that the *Batson* issue presented fundamental error. Instead, it held that the defendant's failure to raise the issue in the trial court could be excused under the "novelty" doctrine of *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). In *Reed,* the Supreme Court considered whether, for federal habeas corpus purposes, there had been excusable cause for failure of a defendant to raise a constitutional claim in his state court appeal. The Court stated:

> [We] hold that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures.

486 U.S. at 16, 104 S.Ct. at 2910, 82 L.Ed.2d at 15.

Whether *Reed* is applicable at all in our situation is questionable since, in *Reed,* the Court was considering a federal habeas corpus standing issue and was dealing with a constitutional principle which, unlike *Batson,* had been held to be fully retroactive. However, even assuming that a *Reed* analysis is appropriate here, we find that the issue under consideration fails the novelty test of *Reed.* The record in this case shows that, throughout the trial court proceedings, the defendant claimed to be concerned about the racial composition of the jury. Nevertheless, he made no objection or record which would have permitted the trial court, the court of appeals or this court to address the issue or correct the problem if one was found. The lack of a *Batson* decision on the books did not prevent Batson, Allen or Griffith from timely raising the issue in their trials. To us, it would be anomalous indeed to hold that the defendant in this case can invoke *Batson* although he never raised it at his trial, while Allen, who anticipated *Batson* and did raise it at his trial, cannot.

Further, on the novelty issue, it is appropriate to note that some state courts have been applying *Batson* -like decisions for a number of years. *See, e.g., People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978); *State v. Neil,* 457 So.2d 481 (Fla.1984); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1979). Indeed, prior to the trial in this case and prior to *Batson,* a member of this court had indicated in a published concurrence that Arizona should adopt a rule similar to *Batson. State v. Wiley,* 144 Ariz. 525, 698 P.2d 1244 (1985) (Feldman, J., specially concurring). That same concurring opinion also pointed out that, in the prescient view of the writer, the question presented was an open one and was not foreclosed by *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (holding that in order to prove a violation of the equal protection clause of the fourteenth amendment, a defendant must show that black jurors had been systematically excluded from juries over a long period of time).

We do not deny that *Batson* is a significant change in the law. It is not, however, so novel an idea as to excuse the defendant's failure to make a timely objection. Had he done so, the record may have provided the information necessary to resolve the issue. As it is, we have no record at all, other than the defendant's after-the-fact unsworn contentions. The lack of a record is in itself a compelling argument for requiring the defendant to object in a timely fashion if he believed the jury was being improperly selected. Had he objected, the facts could easily have been determined by the trial court or a proper record could have been made for appellate review. Permitting such an issue to be injected belatedly on appeal places an intolerable burden on the trial court, the appellate court, and the parties. Therefore, we hold that appellant's failure to raise the issue at the trial court level is not excused.

## SUFFICIENCY OF PRIMA FACIE CASE

■ Although we have held that the court of appeals should not have reached the merits of the defendant's *Batson* argument, for purposes of future guidance we will also comment on that court's conclu-

sion that a prima facie case of prosecutorial discrimination had been established.

In *Batson*, the Court indicated that to establish a prima facie case:

> [T]he defendant first must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.
>
> Second, the defendant is entitled to rely on the fact as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate....
>
> Finally, the defendant must show that these facts *and* any other relevant circumstances raise an inference that the prosecutor used that practice to exclude veniremen from the petit jury on account of race.

*Batson*, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88 (emphasis added).

The court of appeals noted that the defendant here is black and that he claims that two members of his race were stricken from the jury by the state. From this alone, the court concluded that a prima facie case of prosecutorial discrimination had been established. Under *Batson*, the totality of the circumstances of the particular case must be examined to determine whether an inference of misconduct by the state has been established. In some instances, striking two members of a defendant's race, particularly if they are the only two, may be enough to support a finding of prima facie discrimination. However, we do not read *Batson* as requiring such a finding every time two members of a minority are stricken from a jury being selected to try a member of the same minority.

### DISPOSITION

Those portions of the court of appeals' opinion dealing with *Batson* are vacated. This case is remanded to the trial court for resentencing in accordance with the remainder of the court of appeals' opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.