Kenneth Ray MATHEWS, Appellant,

v.

STATE of Texas, Appellee.

No. 437–87.

Court of Criminal Appeals of Texas, En Banc.

April 12, 1989.

Larry P. Urquhart, Brenham, for appellant.

John B. Holmes, Jr., Dist. Atty. & Cathleen C. Herasimchuk & Carol Davies, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of aggravated robbery and sentenced by a jury to twenty years in the Texas Department of Corrections. The court of appeals affirmed his conviction in an unreported opinion. *Mathews v. Texas*, No. 01–85–0974–CR, 1987 WL 7654 (Tex.App.—Houston [1st Dist.] 1987).

We granted appellant's petition for discretionary review to determine whether the court of appeals erred in failing to abate the appeal and remand for a *Batson* hearing. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant's case was tried in early November of 1985, and was pending on appeal when the Supreme Court's opinion in *Batson* was handed down. Therefore, he is among those to whom retroactivity would apply. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). However, the record in this case is devoid of any

evidence which would enable appellant to make out a prima facie case of purposeful discrimination. There is no information as to the racial makeup of the venire or the race of those peremptorily struck by the State. There are no juror information cards, or anything else to indicate the racial composition of the panel. The jury strike list is present, but there is no indication there, either, as to the race of the veniremen. Appellant's counsel did not even object to the jury panel at any time before or after trial. Appellant is thus asking this Court to allow him to raise *Batson* error for the first time on appeal.

Appellant asserts that, because his trial occurred before the Supreme Court's opinion in *Batson* was handed down, it would have been useless for him to have objected. In pre-*Batson* cases, a defendant was required to assemble evidence of an historical use of peremptories by the prosecutor to strike all Blacks from criminal venires. Because of this onerous burden, an objection to no more than the composition of his petit jury would have availed him nothing prior to *Batson*. Although this assertion may be true, it has been settled law for many years that "a 'State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause.'" *Batson v. Kentucky*, supra, 476 U.S. at 84, 106 S.Ct. at 1716, citing *Swain v. Alabama*, 380 U.S. 202, 203–04, 85 S.Ct. 824, 826–27, 13 L.Ed.2d 759 (1965). Appellant's trial counsel must surely have been aware of the rule enunciated in *Swain*, supra. In *Batson* and *Griffith*, as

well as cases from this Court, there was at least an objection in the record.[1] In *Henry v. State*, 729 S.W.2d 732 (Tex.Cr.App.1987), we left open the question of whether *Batson* error may be raised for the first time on appeal. *Henry*, supra at 736 n. 3. In *Henry*, the defendant had objected to the State's use of its peremptories to strike all Blacks from the venire only after the jury had been selected and sworn when he moved to strike the panel. There, we observed:

"We find nothing in the Supreme Court opinions which requires that, in cases pending on review or not yet final at the time the *Batson* case was decided, the defendant object before the jury was sworn. Rather, the opinions suggest *at most* that the defendant present the issue to the trial court."

729 S.W.2d at 736 (emphasis in original).

Appellant asks this Court to take the "small step strongly suggested" by the above quote to allow him to raise his claim even though he failed to preserve error or to make a record sufficient to show prima facie discrimination. However, we believe the referenced quote does imply that a defendant must at least call the trial court's attention to the issue at *some* point during the pendency of the trial. Here, defendant did not do so at any time. It was for this reason the appellate court rejected his claim, holding that because appellant had not objected, he failed to preserve error and so presented nothing for review.[2] We would be inclined to agree without additional comment were it not for

---

1. See especially *Arthur Lee Williams v. State*, 731 S.W.2d 563, at 564 (Tex.Cr.App.1987), on remand for further consideration of disposition of ground six on original submission, 682 S.W. 2d 538, at 543 (Tex.Cr.App.1984), after which we stayed mandate on motion filed October 25, 1984, by same counsel who tried the instant cause in November 1985. See also, e.g., *Keeton v. State*, 724 S.W.2d 58 (Tex.Cr.App.1987) *DeBlanc v. State*, 732 S.W.2d 640 (Tex.Cr.App. 1987).

2. Although the State asserts that under federal law, *Batson* error may not be raised on collateral attack, *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), the State has misconstrued the holding there. In *Griffith*,

supra, the Supreme Court held that *Batson* was to be applied retroactively to all cases, state or federal, pending on direct review or not yet final when the *Batson* opinion was handed down. *Allen v. Hardy*, decided before the Court's opinion in *Griffith*, merely held that *Batson* was not to be applied retroactively on collateral review of convictions that became final *before* that opinion was announced. (This holding was recently reaffirmed by the Supreme Court in *Teague v. Lane*, —— U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). Clearly, that is not the situation here. Therefore, questions of preservation aside, the appellant would be permitted to raise this issue in an application for writ of habeas corpus.

prior holdings of this Court regarding this State's contemporaneous objection rule which further complicate our analysis.

This Court has, in the past, declined to apply the contemporaneous objection rule to error involving a novel constitutional claim. "Where a defect of constitutional magnitude has not been established at the time of trial, the failure of counsel to object does not constitute waiver." See *Cuevas v. State*, 641 S.W.2d 558, 563 (Tex.Cr.App. 1982); *Ex Parte Bravo*, 702 S.W.2d 189, 191 (Tex.Cr.App.1985); *Cook v. State*, 741 S.W.2d 928, 944 (Tex.Cr.App.1987); *Ex Parte Chambers*, 688 S.W.2d 483 (Tex.Cr. App.1984). In *Chambers*, supra, we reprised our own state's rule, *viz.*:

> "[A] defendant has not waived his right to assert a constitutional violation by failing to object at trial if at the time of his trial the right had not been recognized."

688 S.W.2d at 486 (Campbell, J., concurring).

■ At this juncture, it is appropriate to reiterate that the federal procedural default doctrine also involves a "novelty" test, providing that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). This test determines federal cognizability where there has been a procedural default at the state level, and as pointed out in *Chambers*, supra, the federal procedural default doctrine *per se* applies only in federal habeas corpus proceedings. This Court also conducts a "novelty" analysis; however, when we do so, it is to decide whether there need be a contemporaneous objection in the first instance. Finding a constitu-

tional claim sufficiently "novel", we hold there is no procedural default.

However, we hold the rule in *Chambers* does not control here.[3] *Batson* did not create a new constitutional right. That purposeful discrimination by the State through use of peremptories to strike Blacks from the jury venire violates the Fourteenth Amendment had already been set forth in *Swain v. Alabama*, supra, wherein the United States Supreme Court held that in order to establish a case of purposeful discrimination, "the defendant must show ... the prosecutor's systematic use of peremptory challenges against Negroes over a period of time." 380 U.S. at 227, 85 S.Ct. at 839. *Batson* reprised this equal protection right, merely shifting the evidentiary burden to the State to rebut a defendant's prima facie case of purposeful discrimination. See *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 2881, 92 L.Ed.2d 199 (1986). We do not find the claim was so novel that appellant's failure to object may be excused. *Ergo*, we hold that, under the caselaw of this State, appellant may not raise *Batson* error for the first time on appeal, when there is nothing in the record which would allow him to show purposeful discrimination, or even an objection. What may be a "small step" for appellant would unquestionably amount to a "giant leap" for this Court. The court below did not err by refusing to abate the appeal and remand the case for a *Batson* hearing. Accordingly, the judgment of the court of appeals is affirmed.[4]

TEAGUE, Judge, dissenting.

Because I continue to subscribe to the views that I expressed in the dissenting opinion I filed on original submission in this Court's opinion of *Williams v. State*, (Tex. Cr.App. No. 69,582, June 22, 1988), which is

---

**3.** This is unlike the situation in *Chambers,* where *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 error was the issue; unquestionably, that case established a new constitutional violation.

**4.** We find it unnecessary to invoke cases from other state courts in support of our holding, as the State urges in its brief. For example, with-

out extensive research, we do not perceive the Arizona Supreme Court's meaning of "fundamental error" when it holds "a *Batson* issue does not present fundamental error, and a failure to raise it cannot be excused on that ground." *Williams v. State,* No. 69,582 (Tex. Cr.App.1989, delivered June 22, 1988), quoting *State v. Holder,* 155 Ariz. 83, 745 P.2d 141 (1987).

contrary to what the majority opinion holds in this cause, I am compelled to dissent.

Contrary to what the majority opinion by Judge Clinton might insinuate, the Supreme Court's decision of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986), was so novel and so revolutionary that some scholars have claimed that it "leaves the law in a state of confusion." *Batson* held for the first time in Supreme Court history that "the prosecution's freedom of choice [was circumscribed] by deciding that the principles embodied in the Equal Protection Clause are applicable in reviewing the exclusion of potential jurors from the venire." Erickson, Neighbors, and George, *United States Supreme Court Cases and Comments* (1986 edition), § 12.07[b] at pages 12–154 and 12–155. Therefore, given the impact that *Batson* has had on our criminal jurispurdence, it should not be questioned, in the sense that it favors a defendant, that *Batson* is probably the most revolutionary criminal law opinion handed down by the Supreme Court since former Chief Justice Earl Warren left office. Much like many of the "Warren" Court's "revolutionary" opinions were criticised by both lay and legal persons, *Batson,* of course, has received its fair share of unjustified criticisms, usually from those who favor the law enforcement model penal code and code of criminal procedure.

I believe that everyone in the criminal legal community who consistently reads this Court's opinions should now be familiar with Judge Clinton's use of footnotes in his opinions. Therefore, it seems to me that given Judge Clinton's conclusion regarding the claim that Kenneth Ray Matthews, henceforth appellant, makes, that the prosecuting attorney wrongfully used one of his peremptory strikes to remove from the venire the sole black venireperson who could have served as a juror in this cause, and who was more than qualified to serve as a juror, was not so novel when appellant's case was tried that a proper objection should have then been leveled at the prosecuting attorney's use of one of his peremptory strikes to eliminate the sole

qualified black venireperson from serving as a juror, it should be a very simple task for Judge Clinton, of course without his taking into consideration what the Supreme Court stated and held in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, what this Court had long held on the subject of a prosecuting attorney blatantly using his peremptory strikes on minority venirepersons, and without being prescient in August, 1985, to set out in a footnote what objection appellant's trial counsel should have made that this Court would have *at that time* held was not only sufficient to establish error, but that it also established reversible error. Perhaps Judge Clinton does not accept my challenge because he is fully aware that back in those hard times this Court's members would have considered any such objection, no matter how perfect, as either frivolous or that it bordered on being frivolous.

This Court's majority opinion by Judge Clinton holds: "[U]nder the caselaw of this State, appellant may not raise *Batson* error for the first time on appeal, when there is nothing in the record which would allow him to show purposeful discrimination, or even an objection." Given the fact that we are only talking about one qualified black venireperson, rather than several, who was struck by the prosecuting attorney, the question that should be addressed by this Court, but is not, is whether, if appellant had made a proper "Batson" objection, he would have established a prima facie case of racial discrimination, a necessary prerequisite under *Batson* that must be satisfied before appellant is entitled to be granted any relief. This Court has not yet precisely defined the perimeters of just what "a prima facie case of discrimination" might be when there was only one qualified black venireperson on the jury panel and the prosecuting attorney used one of his peremptory strikes to eliminate that individual from the jury panel. I believe that this case is a good one in which to address that issue. Sad to say, this Court does not take the opportunity to address that issue.

The majority opinion states the following: "What may be a 'small step' for appel-

lant would unquestionably amount to a 'giant leap' for this Court." (All quotes found on page 733 of the majority opinion.) I am not quite sure what to make out of this statement. However, given the revolutionary holding that the Supreme Court made in *Batson,* what the Supreme Court actually did in *Batson* was not the taking of "one small step for mankind", but was actually the taking of a giant step for all persons of a minority race who have been accused of committing a criminal wrong who desire to have a jury trial without fear that the prosecuting attorney will arbitrarily and capriciously eliminate from the jury panel any individual who just happens to be of the same race as the defendant.

The majority opinion states: "We do not find the [*Batson*] claim was so novel that appellant's failure to object may be excused." Page 733 of the majority opinion. Given the fact that for over twenty years the law of this State was that "The mere exercise of peremptory challenges [by the prosecuting attorney] is not sufficient to sustain the ground of error [of wrongful jury selection]", see *Williams v. State,* 682 S.W.2d 538 (Tex.Cr.App.1984), certiorari granted and cause remanded to Court of Criminal Appeals "for further consideration in light of *Griffith v. Kentucky,* U.S., 107 S.Ct. 708, L.Ed.2d (February 27, 1987)", which occurred after appellant's case was tried, I am unable to understand why, when the jury was selected in this cause, it was necessary for appellant to have made what was then a non-existent objection, or at best what this Court would have deemed a frivolous objection.

In *Harris v. State,* 658 S.W.2d 180 (Tex. Cr.App.1983), notwithstanding that the defendant's attorney objected to his client, a black, being tried by an all-white jury, which resulted because the prosecutor used his peremptory strikes to eliminate all the black members of the venire from jury service, this Court rejected the defendant's claim in *a per curiam opinion.* The defendant Harris's authority for his claim was *Swain v. Alabama.* I believe this Court rejected his claim in a per curiam opinion because the members of this Court thought the issue was so well settled that it

was unnecessary to repeat its prior holding one more time in a published opinion.

However, this Court's per curiam opinion did not deter the defendant Harris for he petitioned the Supreme Court of the United States for relief, which denied his petition for certiorari. Justice Marshall, joined by Justice Brennan, wrote a strong dissenting opinion to that Court's denial of the defendant's petition for certiorari. Justice Marshall pointed out the following in his dissenting opinion: "Over the past year, I have repeatedly urged my colleagues to grant certiorari in similar cases in which state prosecutors have blatantly employed peremptory challenges to remove Negro jurors. See *Williams v. Illinois,* 466 U.S. 981 [, 104 S.Ct. 2364, 80 L.Ed.2d 836] (1984) (MARSHALL, J., dissenting); *Gilliard v. Mississippi,* 464 U.S. 867 [, 104 S.Ct. 40, 78 L.Ed.2d 179] (1983); (MARSHALL, J., dissenting); *Mc Cray v. New York,* 461 U.S. 961, 963 [, 103 S.Ct. 2438, 2439, 77 L.Ed.2d 1322] (1983) (MARSHALL, J., dissenting). The Court, however, remains satisfied that *Swain v. Alabama,* 380 U.S. 202 [, 85 S.Ct. 824, 13 L.Ed.2d 759] (1965), adequately protects criminal defendants against prosecutorial misuse of peremptory challenges." 467 U.S. 1261, 1262, 104 S.Ct. 3556, 3557, 82 L.Ed.2d 858.

However, in a relatively short period of time, Justice Marshall and Justice Brennan's voices were finally heard by the other members of the Court. On September 3, 1985, a little over one year after Justice Marshall filed his dissenting opinion in *Harris v. Texas,* the members of the Supreme Court voted to grant the defendant's petition for certiorari in *Batson.* Thus, over 20 years had elapsed since the Supreme Court handed down *Swain v. Alabama,* which amounted to "it-is-a-pleasing-to-a-defendant's-eye-opinion, but-was-really-a-no-win-for-the-defendant-opinion." Jury selection in this cause commenced on August 22, 1985, at which time *Swain v. Alabama* controlled the issue of the prosecuting attorney using peremptory strikes on members of a minority race. When the members of the Supreme Court were considering whether or not to grant the defen-

dant Harris' petition for certiorari, I wonder if those justices who voted to deny granting the petition for certiorari, in referring to Justice Marshall's dissenting opinion, mumbled out loud: "Justice Marshall, where have you been all these years? What you are arguing has already been rejected by this Court's decision of *Swain v. Alabama.*"

I do not disagree with the general abstract academic proposition that even if the score is 222–0 against the defendant, and there are only two minutes left in the last quarter, a gutsy defendant's attorney will continue to stand and make objections. These kind of criminal defense attorneys are great believers in the addage, "We didn't lose the game, time just ran out." However, after you have lost 222–0 for 20 straight years, should it be necessary for the defendant's attorney to continue to object, hoping all the while that someday the members of the Supreme Court will see fit to change the law? I don't believe so.

The majority opinion, however, tells us, at least implicitly, that *Batson* did not really do anything, from a federal constitutional standpoint, to *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Literally that may be true. However, from a practical standpoint, *Batson* stood the law on its head in this area of the law and was so revolutionary that its vibes are still being felt in the criminal justice community, and I predict that in Texas, in areas where a minority race makes up a substantial proportion of the population from which the jurors come, *Batson's* vibes will be felt long after the present members of this Court are dead and buried. Today, the members of this Court, and the members of the courts of appeals of this State, almost on a weekly basis, are flooded with *Batson* claims. And this Court has not yet fine tuned its interpretation of *Batson.*

Perhaps when all is said and done only Justice Marshall and a few other hearty souls might disagree with the statement in this Court's majority opinion that "We do not find the [*Batson*] claim was so novel that appellant's failure to object may be excused." Count me as one of those individuals. Given the state of the law when appellant's jury was selected, any objection that appellant's trial attorney might have made would have been treated by this Court as either frivolous or that it bordered on being frivolous.

Therefore, I respectfully dissent to the majority opinion's above holding that it was incumbent upon the defendant to make what I believe would have then been considered by this Court either as a frivolous objection or as an objection that bordered on being frivolous.

MILLER, J., joins.