### Ex parte Eladio CRISPEN.

### No. 70755.

Court of Criminal Appeals of Texas, En Banc.

Sept. 20, 1989.

Curtis Mason, Huntsville, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is a post-conviction application for writ of habeas corpus filed pursuant to Art. 11.07, Sec. 2, V.A.C.C.P. Applicant was convicted by a jury of aggravated sexual assault, V.T.C.A. Penal Code Sec. 22.-021(a)(1)(B)(i), and sentenced to life imprisonment in the Texas Department of Corrections. Applicant's conviction was affirmed on appeal. *Crispen v. State*, 702 S.W.2d 753 (Tex.App.—Tyler 1986).

On direct appeal applicant raised only two points of error, neither of which dealt with the contention he raises in this writ application. Applicant now contends the showing to the jury of a pretrial videotaped interview of the complainant and a social worker, made in compliance with Art. 38.-071, Sec. 2, V.A.C.C.P., violated his right of confrontation guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 10 of the Texas Constitution and his right to due process under the Fourteenth Amendment to the United States Constitution and Art. I, Sec. 19 of the Texas Constitution. Applicant invokes our recent decision in *Long v. State*, 742 S.W.2d 302 (Tex.Cr.App.1987), cert. denied —— U.S. ——, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988), wherein we held Art. 38.071, Sec. 2, supra, was unconstitutional as violative of the due process clause of the Fourteenth Amendment, the due course of law provisions in Art. I, Sec. 19 of the Texas Constitution, and the right of confrontation guaranteed by the Sixth Amendment to the United States Constitution and Art. I, Sec. 10 of the Texas Constitution. The State did not file an answer to the writ application. In its findings of fact and conclusions of law, the convicting court determined a hearing on the writ was not necessary and recommended relief be denied.

In *Ex parte Hemby*, 765 S.W.2d 791 (Tex.Cr.App.1989), we held our decision in *Long*, supra, should be given retroactive effect to cases for which all direct appellate avenues had been exhausted before the date of that decision. The applicant in *Ex parte Hemby* timely objected to the admission of the videotaped testimony of the child complainant at trial, thus only the retroactivity of the *Long* decision and not preservation of error was the issue in that decision. We filed and set this application to address that issue, *viz:* whether "*Long* error" may be raised in a writ of habeas corpus when the applicant has failed to object to the admission of the videotape at trial on the ground that his confrontation rights were violated. Thus in this cause we address only the issue of whether a trial objection is required to preserve

"*Long* error" for collateral review. Since we hold *infra* applicant waived any error by failing to object and do not address the merits of his claim, we express no opinion as to the cognizability of "*Long* error" via a writ of habeas corpus. See and cf. *Ex parte Truong*, 770 S.W.2d 810 (Tex.Cr.App. 1989) (claim of unconstitutional jury charge on parole law not cognizable in postconviction habeas proceeding), and *Ex parte Banks*, 769 S.W.2d 539 (Tex.Cr.App.1989) (Opinion on Rehearing) (exclusion of prospective jurors in violation of federal constitution cognizable). The scholarly remarks of our brother Clinton, in his concurring opinion, concerning the criteria of cognizability of habeas corpus claims in state courts will doubtless be revisited when the issue is squarely before the court.

In the case at bar, applicant asserts the State called the social worker who conducted the videotaped interview to testify at trial. No attorney for either party was present during the videotaped interview. After the social worker testified, the videotape was played before the jury over applicant's objection to the "claim [chain?] of custody." The State then called both the victim and the victim's mother to testify. Applicant testified and denied committing the alleged offense. Applicant also introduced into evidence a physician's statement indicating the victim showed no physical signs of sexual abuse. During deliberations, the jury sent a note to the trial judge requesting to see the videotape again, but there is nothing in the record before us to indicate whether the trial judge granted this request. As previously noted, applicant was found guilty and the trial court assessed punishment at life imprisonment.

■ The docket sheet reflects applicant's trial began on January 22, 1985, and he was sentenced on January 30, 1985. Our decision in *Long*, supra, was delivered on July 1, 1987. Applicant contends cause exists for his "failure to object to the showing of the videotaped interview at the trial or to raise the issue [whether admission of the videotape denied applicant his right to confront and cross-examine the complainant] on direct appeal in that the only Court of Appeals to have addressed the issue prior to the trial and the filling (sic) of the Brief of Appellant had upheld the statute." See *Jolly v. State*, 681 S.W.2d 689 (Tex. App.—Houston [14th Dist.] 1984), reversed 739 S.W.2d 345 (Tex.Cr.App.1987). We are not persuaded by applicant's argument and hold, for reasons to be given, that a defendant who fails to object on confrontation grounds to admission of a videotape at trial may not raise the issue of "*Long* error" for the first time on collateral review.

■ Thus with regard to raising "*Long* error" on collateral attack, this Court adheres to the contemporaneous objection rule which is, generally, that "appellate courts will not consider any error which counsel for the accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court." *Gibson v. State*, 726 S.W.2d 129 (Tex.Cr.App.1987), and cases cited therein. We have, however, declined to apply this rule to error involving a novel constitutional claim. Cf. *Mathews v. State*, 768 S.W.2d 731 (Tex.Cr.App.1989). In *Mathews*, we discussed this "novelty" analysis as used by federal and state appellate courts and reiterated our own rule that "a defendant has not waived his right to assert a constitutional violation by failing to object at trial if at the time of his trial the right had not been recognized." *Mathews*, supra, 768 S.W.2d at 733, citing *Ex parte Chambers*, 688 S.W.2d 483 (Tex.Cr.App.1984) (Campbell, J., concurring). We concluded in *Mathews* that the decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that the State may not purposefully discriminate against blacks during voir dire through the use of its peremptory challenges, did not create a new constitutional claim and, thus, the appellant could not raise *Batson* error for the first time on appeal when there was no objection or anything in the record which allowed the appellant to show purposeful discrimination.

We likewise find that our decision in *Long* did not create a new constitutional claim. The *Long* decision was founded on

principles of due process and the right of confrontation guaranteed by both the federal and state constitutions. Writing for the majority in *Long,* Judge Duncan thoroughly reviewed the history of the right of confrontation and its ratification on both federal and state levels. This Court concluded Art. 38.071, Sec. 2, *supra,* violated the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 10 and Art. I, Sec. 19 of the Texas Constitution. The *Long* decision did not create a new claim under these constitutional provisions but determined that the statute, Art. 38.071, Sec. 2, *supra,* impermissibly imposed barriers on an accused's established constitutional rights. Although the defect in Art. 38.071, Sec. 2, *supra,* had not been addressed by this Court at the time of applicant's trial, the rights affected by the statute were well-established at the time of his trial, and applicant apparently was aware of a possible constitutional defect in the statute in that the statute had already been challenged on appeal. We do not find that the claimed defect was novel so as to excuse applicant's failure to object. Consequently, we hold that unobjected to *Long* error may not be raised for the first time by collateral attack.

The relief sought is denied.

McCORMICK, P.J., and CAMPBELL and DUNCAN, JJ., concur in the result.

CLINTON, Judge, concurring.

In remarking that asserted violations of *Long v. State,* 742 S.W.2d 302 (Tex.Cr.App. 1987), raised in context of a post-conviction application for writ of habeas corpus, will be subject to a contemporaneous objection requirement, the majority alludes to cases discussing asserted errors *"appellate* courts will not consider" due to procedural default, *viz: Gibson v. State,* 726 S.W.2d 129 (Tex.Cr.App.1987), and cases cited therein at 131.[1] Manifestly these cases do

not inform the question whether a requirement of preservation of an asserted violation of federal constitutional dimension ought to inhere in a post-conviction collateral attack under Article 11.07, V.A.C.C.P. However, in my view it is indeed appropriate to require that an objection be lodged in the trial court in order to preserve an asserted claim of violation of the Sixth and Fourteenth Amendment guarantees of confrontation acknowledged in *Long*[2] in an Article 11.07 application for writ of habeas corpus, for reasons which follow.

Elsewhere I have described the "advent of the Substantial Federal Question" in state post-conviction collateral attack via what is presently Article 11.07, *supra.* See *Ex parte Banks,* 769 S.W.2d 539, 545–47 (Tex.Cr.App.1989) (Clinton, J., dissenting); *Ex parte Truong,* 770 S.W.2d 810 (Tex.Cr. App.1989). Prior to that advent, questions of cognizability of a claim on collateral attack of a judgment of conviction turned on whether it "went to the integrity of the judgment, *viz:* Whether the claim is that the judgment is void for illegality or voidable for irregularity." *Ex parte Banks,* supra, at 544. As the United States Supreme Court began to recognize, for purposes of implementing federal habeas corpus provisions, that "[a] court's jurisdiction at the beginning of trial may be lost" on account of some federal constitutional defect committed in the proceedings, *Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, 1468 (1938), so, too, this Court began to consider violations of certain federal constitutional rights to impact the integrity, if not jurisdiction, of the trial court to such an extent as to render a conviction "void" for purposes of our own post-conviction collateral review. See cases discussed in *Ex parte Banks,* supra, at 545–47. The Fifth Circuit, under pressure from the Supreme Court to effectuate federal constitutional rights via 28 U.S.C.A. § 2254, looked to our own Article 11.07 as

---

**1.** All emphasis added unless otherwise indicated.

**2.** The State constitutional component of applicant's claim is not cognizable in an Article 11.07 application for writ of habeas corpus, *Ex parte*

*Hemby,* 765 S.W.2d 791 (Tex.Cr.App.1989), notwithstanding, in view of *Ex parte Truong,* 770 S.W.2d 810 (Tex.Cr.App.1989). Therefore the majority needlessly addresses whether applicant has preserved this facet of his claim.

a possible state avenue for providing a full and fair fact-finding hearing consonant with the dictates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and hence began to dismiss federal writs under the rubric of exhaustion of state remedies. E.g., *Carroll v. Beto*, 379 F.2d 329 (CA5 1967).

Having already begun to entertain certain federal claims in post-conviction collateral attacks, this Court readily acceded to the Fifth Circuit's gloss, particularly in light of amendments to Article 11.07 in 1967. *Ex parte Young*, 418 S.W.2d 824 (Tex.Cr.App.1967). There the Court observed:

"A judgment of conviction obtained in violation of due process of law is void for want of jurisdiction of the court to enter such judgment. *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.[3]

"Habeas corpus is an appropriate means by which relief from confinement under a void conviction may be obtained in the State as well as in the Federal Courts. [Citing, *inter alia*, those cases discussed in *Ex parte Banks*, supra, at 545–47]."

*Id.*, at 826. It seems all but certain that states are not compelled by any provision of the federal constitution to provide post-conviction collateral avenues for vindication of federal constitutional rights. See *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Murray v. Giarratano*, — U.S. —, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); Cf. *Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d

422 (1965). Nevertheless, by incorporating the notion of the federal courts that a constitutional defect can render a conviction "void" into its own post-conviction habeas corpus jurisprudence, this Court did in fact provide such an avenue.

The era of the Warren Court saw a proliferation of federal constitutional rights recognized and made applicable to the states through the Fourteenth Amendment. Accordingly, claims cognizable in a federal writ were expanded beyond those "classic" examples that had been identified before the Supreme Court's decisions in *Fay* and *Townsend* as implicating "fundamental fairness," *viz:* "that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods." *Rose v. Lundy*, 455 U.S. 509, at 544, 102 S.Ct. 1198, at 1217, 71 L.Ed.2d 379, at 404 (1982) (Stevens, J., dissenting). Concomitantly this Court has seen a burgeoning of claims raised in post-conviction writs of habeas corpus under Article 11.07 based upon asserted constitutional defects at trial. In strict adherence to *Ex parte Young*, supra, we have continued to entertain such claims. This is true even though as early as *Waley v. Johnston*, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942), and as late as *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the United States Supreme Court has itself abandoned "the fiction that habeas reached only jurisdictional defects in favor of the statement that '[i]t extends also to those exceptional

---

3. Citation to *Fay v. Noia*, supra, for this proposition is somewhat puzzling. In *Fay* the Supreme Court observed:

"The breadth of the federal courts' power of independent habeas corpus stems from ... the historical essence of habeas corpus that it lies to test proceedings so fundamentally lawless that imprisonment pursuant to them is not merely erroneous but void. Hence, the familiar principle that res judicata is inapplicable in habeas proceedings ... is really but an instance of the larger principle that void judgments may be collaterally impeached.... This is not to say that a criminal judgment resting on a constitutional error is void for all purposes. But conventional notions of finality in criminal litigation cannot be permitted

to defeat the manifest federal policy that federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for plenary federal judicial review." 372 U.S. at 422–23, 83 S.Ct. at 840–41, 9 L.Ed.2d at 859–60. It is for purposes of enhancing its point that *federal* courts have *power* to review federal constitutional claims under 28 U.S.C.A. § 2254, notwithstanding *state* dismissal of such claims on the basis of procedural default, that the Court here spoke in terms of "voidness." Nothing in this or any other passage from *Fay* would seem to mandate that state courts likewise consider a federal constitutional defect necessarily to render a conviction "void" for purposes of invoking state post-conviction collateral remedies.

cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving his rights.' " Wechsler, Habeas Corpus and the Supreme Court: Reconsidering the Reach of the Great Writ, 59 U.Colo.L.Rev. 167, at 174 (1988), quoting *Waley*, 316 U.S. at 105, 62 S.Ct. at 966, 86 L.Ed. at 1304. Though the federal courts have largely ceased to predicate entertainment of constitutional claims under 28 U.S.C.A. § 2254 upon the premise that a constitutional defect divests the trial court of jurisdiction, thus rendering the conviction "void," in continuing to recognize such claims this Court adheres to that "fiction." [4]

It may be that as a matter of policy we would want to recognize federal constitutional claims in state post-conviction collateral attack under Article 11.07, if only to provide a forum in state court for airing claims that may otherwise necessitate a hearing in the federal habeas court under *Townsend v. Sain*, supra. But to say we reach a constitutional defect in post-conviction collateral attack because it serves to "void" the conviction raises anomalies.

In the first place, if the claim is that a defect is sufficient to render a conviction void, in the sense of removing jurisdiction from the convicting court, it makes little sense to speak in terms of a procedural default of that claim. We do not ordinarily think it necessary to object in order to preserve a claim of voidness. Yet we also know that "even a constitutional error may be waived by failure to object." E.g., *Parker v. State*, 649 S.W.2d 46, 55 (Tex.Cr. App.1983).

**4.** Later cases, though ultimately deriving from the holding of *Ex parte Young*, supra, have not expressly retained the language of "voidness," observing simply "that habeas corpus will lie only to review jurisdictional defects or denials of fundamental or constitutional rights." *Watson v. State*, 601 S.W.2d 350, 352 (Tex.Cr.App. 1980); See also *Ex parte Banks*, supra, at 540; *Ex parte Shields*, 550 S.W.2d 670, at 675 (Tex.Cr. App.1977). At work in these decisions, nevertheless, is the notion that, like a defect of jurisdiction, denial of a "fundamental or constitutional" right will void a judgment of conviction.

Second, and similarly, where a constitutional defect is such as to render conviction "void," it would not seem necessary to inquire into retroactivity of a new judicial decision announcing the rule; one would think that any conviction suffering that "voidness" would be subject to collateral attack, irrespective of when the conviction occurred. In *Teague v. Lane*, — U.S. —, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), however, the United States Supreme Court decided that new constitutional rules, though cognizable to all cases on direct appeal, and presumably in federal collateral attack of convictions which become final after announcement of the new rule, would not be cognizable in collateral attack of proceedings that have become final before the new rule is announced. *Teague* ultimately vindicates Justice Harlan's approach to retroactivity as articulated in, e.g., his separate opinion in *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971). But if, consistent with this approach, considerations of "finality" may be allowed to take precedent over recertification of a constitutional defect, it can only be because the defect did not truly nullify the conviction.[5] Even before *Teague v. Lane*, supra, whether a new constitutional requirement or rule would apply retroactively to convictions final before the rule was announced was a troublesome question, turning upon whether the new rule implicated "the very integrity of the fact-finding process." E.g., *Ex parte Hemby*, 765 S.W.2d 791 (Tex.Cr.App.1989), and cases discussed there. Query: if a rule fails to affect "the very integrity of the fact-finding process," should it provide, even prospectively, a basis for post-conviction collateral attack?

**5.** In a similar vein, it is curious that, absent a showing of "cause and prejudice," considerations of, *inter alia*, "finality" should be found to counsel against federal habeas review of a claimed constitutional defect that a state court has declined to review for reasons of procedural default, if the defect genuinely operated to "void" the conviction. See *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

A third anomaly lies in the fact that certain constitutional violations, though because they render a conviction "void" we would reach them on collateral attack, may nevertheless be subject to a harm analysis. Indeed, we have already recognized that *Long* error may be harmless beyond a reasonable doubt. *Mallory v. State*, 752 S.W.2d 566 (Tex.Cr.App.1988), citing *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

In my view these anomalies counsel that we limit cognizability of federal constitutional claims under Article 11.07, supra, to "exceptional" constitutional defects so "fundamental" as not to be susceptible to a determination of harm, such as those identified in *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460, 470 (1986).[6] It is only "[e]rrors of this kind [that] justify collateral relief no matter how long a judgment may have been final and even though they may not have been preserved properly in the original trial." *Rose v. Lundy*, 455 U.S. at 544, 102 S.Ct. at 1217, 71 L.Ed.2d at 404. (Stevens, J., dissenting) (footnotes omitted). In my judgment, nothing in the federal constitution requires this Court to extend the scope of its post-conviction collateral review even as far as this, much less farther. See *Pennsylvania v. Finley, Murray v. Giarratano*, and *Case v. Nebraska*, all supra.

Assuming, however, that the Court will continue indiscriminately to entertain federal constitutional claims under Article 11.-07, supra, we should at least acknowledge that we do so at the behest of the federal courts; not because every such claim, if borne out, would necessarily render the conviction "void." In short, we have agreed to review some merely "voidable" claims in post-conviction collateral attack. Cf. *Ex parte Truong*, supra.

Accepting this premise, there is certainly nothing anomalous in applying our own contemporaneous objection rules to require preservation of some types of constitutional error. In doing so, we but require an accused to signal to appellate or habeas court that he did not in fact acquiesce to receipt of objectionable evidence, argument, procedure, or what have you. See *Polk v. State*, 729 S.W.2d 749, at 753–55 (Tex.Cr.App.1987). To the extent our rules may tend to work an inadvertent "forfeiture" rather than a conscious "waiver" of some, less fundamental constitutional rights, see *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)

---

**6.** Failing this, the Court might at least consider refusing to docket any potentially harmless federal constitutional claim under Article 11.07, supra, unless the applicant, as part of his burden to allege facts which, if true, would entitle him to relief, pleads facts to show how he was harmed by the purported constitutional error. There has already been some stirring in this direction. Compare *Ex parte Maldonado*, 688 S.W.2d 114 (Tex.Cr.App.1985), and *Ex parte Coleman*, 599 S.W.2d 305 (Tex.Cr.App.1978).

In *Ex parte Maldonado*, supra, the Court declined to entertain an application for writ of habeas corpus pursuant to Article 11.07, supra, which alleged fundamental defect in the court's charge to the jury. Recognizing that following *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App. 1985), a fundamentally defective jury charge would provide a basis for post-conviction habeas relief, notwithstanding *Ex parte Coleman*, supra, the Court nevertheless dismissed Maldonado's application without prejudice for failure to allege reasons the purported jury charge error operated, in context of his trial, to deny him a fair and impartial trial. See also *Ex parte White*, 726 S.W.2d 149 (Tex.Cr.App.1987).

It is true that in *Ex parte Maldonado*, supra, a showing of egregious harm was an actual component of the constitutional error; therefore, failure to allege the requisite harm amounted to a failure to state facts establishing error of constitutional proportion. Here applicant's constitutional right to confront his accuser would be denied the moment the jury was allowed to view the videotape, and no further showing is necessary to establish constitutional error. Such error is susceptible, however, to a harmless error analysis. *Mallory v. State*, supra. Harmless constitutional error provides no basis for relief in habeas corpus. *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972). In a direct appeal from a criminal conviction, error mandates reversal "unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." Tex.R.App.Pro., Rule 81(b)(2). Most constitutional errors are subject to the same test. *Rose v. Clark*, supra. In a collateral attack, however, where the burden is upon the applicant to establish the illegality of his constraint, we might justifiably require an applicant to plead and prove that asserted constitutional error in fact more likely than not contributed to his conviction.

(Brennan, J., dissenting), I fail to see any reason this Court should be more accommodating than the Federales themselves. E.g., *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (delineating "cause" prong of "cause and prejudice" standard); *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (delineating "prejudice").

To my mind *Long* error is not so fundamental as to call for suspension of the contemporaneous objection rule. Furthermore, I agree with the majority that applicant's claim does not fall within our own recognized exception to that rule, as recently explicated in *Mathews v. State*, 768 S.W.2d 731, at 733 (Tex.Cr.App.1989). Thus I concur in the judgment of the Court that applicant may not raise his *Long* error by way of Article 11.07, supra.

TEAGUE, Judge, dissenting.

My understanding of the argument that Eladio Crispen, henceforth applicant, makes as to why he is entitled to have the trial court's judgment of conviction set aside is that he is being unlawfully restrained and detained in the Department of Corrections because evidence that was used to convict him at his trial was admitted pursuant to Art. 38.071, § 2, V.A.C. C.P., which statutory provision this Court declared unconstitutional in *Long v. State*, 742 S.W.2d 302 (Tex.Cr.App.1987), cert. denied, —— U.S. ——, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988). Also see *Coy v. Iowa*, 487 U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), 43 CrL 3226, June 28, 1988, and *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). In *Ex parte Hemby*, 765 S.W.2d 791 (Tex.Cr.App. 1989), this Court held as a matter of law that this kind of evidence is always instrumental in obtaining a conviction.

In *Ex parte Hemby*, this Court also held that its decision in *Long* was to be given *complete retroactive effect*. This Court granted the defendant relief in that cause pursuant to the provisions of Art. 11.07, V.A.C.C.P., Texas' post-conviction statute. The defendant's conviction had previously been affirmed by the Beaumont Court of Appeals. No petition for discretionary review was ever filed in this Court. In the 11.07 proceedings, the State merely argued that the following question should be answered in the negative, "whether *Long* should be given retroactive effect to those cases for which all direct appellate avenues had been exhausted before the date of that decision." (792). The majority opinion in this cause, see page 104, believes that was this Court's holding. It was not. This Court held that "our decision in *Long v. State*, supra, is to be afforded complete retroactive effect. In so holding, we do not purport to mark the boundaries of retroactivity of new State constitutional rulings affecting criminal procedure; nor should we be understood necessarily to adopt the *Stovall* test for determining retroactivity to cases already through the appellate process on the date of decision such new State constitutional rules. Having deemed that part of our holding in *Long* which relied on Federal constitutional provisions to have retroactive effect, however, surely we should not apply our comparable State provisions more parsimoniously." (794). That was the holding in *Ex parte Hemby*.

Thus, under *Ex parte Hemby*, it should be unquestioned that *Long* error may be raised by way of Art. 11.07, and this Court's decision of *Long* is to be given "complete retroactive effect."

It is true that in *Ex parte Hemby*, because of the State's concession, no hearing was held. However, at no place in the opinion do I find where this Court held that an objection at trial was a necessary prerequisite before the defendant was permitted to bring his complaint pursuant to Art. 11.07. Given what the majority opinion states, shouldn't the applicant at least be afforded a hearing on the issue?

Today, without a hearing, the majority opinion summarily holds that "a defendant who fails to object [at trial] on confrontation grounds to admission of a videotape at trial may not raise the issue of '*Long* error' for the first time on collateral review." Given what this Court's aggressive and assertive majority stated and held in *Ex parte Banks*, 769 S.W.2d 539 (Tex.Cr.App.,

1989), *Ex parte Truong*, 770 S.W.2d 810 (Tex.Cr.App., 1989); and *Ex parte Mathews*, 768 S.W.2d 731 (Tex.Cr.App., 1989), this holding neither amazes nor shocks me.

However, given what this Court stated and held in the above cases, what does amaze and shock me is why it takes this Court almost four complete legal size pages to tell an incarcerated inmate in the Texas Department of Corrections, where most of our post-conviction applications for the writ of habeas corpus come from, also see *Ex parte Renier*, 734 S.W.2d 349 (Tex. Cr.App.1987), who wish to collaterally attack a trial court's judgment of conviction, what can be stated in one short sentence, namely: *No kind of error is subject to collateral attack unless the defendant objected to such error at his trial and he also raised the error on both direct appeal and in a petition for discretionary review,* unless he can show good cause for not doing either.

I must ask the following question: Isn't the majority opinion in conflict with what this Court recently stated and held in *Casares v. State*, 768 S.W.2d 298 (Tex.Cr. App., 1989)?

In *Casares*, this Court was confronted with the issue whether another kind of error of constitutional magnitude, "Rose error," see *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1987), also see *Jefferson v. State*, 751 S.W.2d 502 (Tex.Cr.App.1988), which error was found in *Rose* to be of constitutional magnitude, could be raised for the first time on direct appeal, even when the defendant did not object at trial to such error.

A majority of the First Court of Appeals, see *Casares v. State*, 712 S.W.2d 818 (Tex. App.—1st 1986), ruled that "The constitutionality of a statute may not be raised on appeal unless the issue was first raised in the trial court. (Citations deleted.)" (821). This Court, however, reversed this holding, holding that an unconstitutional statute *cannot* provide a basis for any right or relief, and thus at least implicitly held that the constitutionality of a statute may be collaterally attacked for the first time on appeal.

Today, however, the applicant in this cause is poured out because he failed to object in the trial court to the now declared constitutional error. Why wasn't the defendant Casares not poured out for this same reason.

I respectfully dissent to the aggressive and assertive majority's continued desire to do away with the provisions of Art. 11.07, which in my viewpoint, as a result of the above cases, no longer actually exists, at least from a practical, if not legal, standpoint.