

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOS. WR-80,939-01, WR-80,939-02, & WR-80,939-03

### EX PARTE ERIC REED MARASCIO, Applicant

### ON APPLICATIONS FOR WRIT OF HABEAS CORPUS
### CAUSE NOS. W380-80601-09-HC, W380-80602-09-HC, & W380-80603-09-HC
### IN THE 380TH DISTRICT COURT
### FROM COLLIN COUNTY

KEASLER, J., filed a concurring opinion, in which HERVEY and YEARY, JJ., joined.

### CONCURRING OPINION

I concur in denying Eric Maracio's applications for writ of habeas corpus. However, I would do so based on this Court's holding in *Ex parte Townsend* and its underlying logic and intent. In resolving certain claims, our habeas corpus jurisprudence lacks a consistent theory of cognizability—a term this Court understands to mean which claims are entitled to merits review. The double-jeopardy claim presented today is one example. Relying on familiar error-preservation and rights-based principles, this Court should pronounce a consistent and logical theory defined by unified principles.

## I. Preservation of Error

## A. Similarity of direct appeal and habeas corpus

Our case law has long held that the error-preservation requirement exists with equal force in habeas proceedings as it does in appellate proceedings. As a result, error preservation is generally a prerequisite to habeas corpus relief.[1] Since at least 1974 in *Ex parte Bagley*, this Court has held that "[t]he same rule as to the necessity of an objection to complained of evidence has been applied by this Court in habeas corpus cases."[2] Many years after *Bagley*, this Court continued to embrace the contemporaneous-objection rule on habeas which is, generally, that "appellate courts will not consider any error which counsel for the accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court."[3] The extension of this premise established the central vein of our habeas jurisprudence that record claims—those that should have been litigated in the trial court and on direct appeal—will be denied.[4] These principles only added to the widely recognized limitations of the writ set out by this Court

---

[1]  *Garza v. State*, 435 S.W.3d 258, 261–62 (Tex. Crim. App. 2014).

[2]  *Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974). *See, e.g.*, *Ex parte Jimenez*, 364 S.W.3d 866, 882 (Tex. Crim. App. 2012); *Ex parte Medellin*, 280 S.W.3d 854, 860–63 (Tex. Crim. App. 2008) (Cochran, J., concurring); *Ex parte Crispen*, 777 S.W.2d 103, 105 (Tex. Crim. App. 1989) (plurality opinion).

[3]  *Ex parte Crispen*, 777 S.W.2d at 105.

[4]  *See, e.g.*, *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (op. on mot. for reh'g).

over 80 years ago consistent with the writ's ancient origins: "Habeas corpus is an extraordinary writ, and the general rule is that it does not lie where relief may be had, or could have been procured by resort to another remedy. It is also settled that use of the writ will not be permitted as a substitute for appeal."[5] Like contemporaneous-objection law generally, whether a particular claim should receive merits review "should be informed first and foremost by the State's legitimate interest in the integrity and finality of convictions. The appellate process is past. Any standard for deciding what claims to entertain in a collateral proceeding should be rigorous."[6] But as I later set out, the weighty interests in a conviction's integrity and finality must yield in the face of allegations of certain rights' violations that demand merits review.

In practice, one of the first expressions of the limitations of habeas corpus when an opportunity to appeal existed—and therefore afforded a forum for an adequate remedy—was *Ex parte Loper*.[7] This Court held that through an application for writ of habeas corpus,

---

[5] *Ex parte* Wilcox, 79 S.W.2d 321, 321 (Tex. Crim. App. 1935) (citations omitted). *See* 2 THOMAS CARL SPELLING, A TREATISE ON EXTRAORDINARY RELIEF IN EQUITY AND AT LAW, § 1151 (Boston, Little, Brown & Co. 1893); 1 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE AS ADMINISTERED IN ENGLAND AND AMERICA § 49 (Boston, Little, Brown & Co. 1918). *Accord Ex parte Gardner*, 959 S.W.2d at 199 (quoting *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978), "It is well-settled 'that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.'")

[6] *Ex parte Goodman*, 816 S.W.2d 383, 387 (Tex. Crim. App. 1991) (Clinton, J., concurring); *Ex parte Gardner*, 959 S.W.2d at 191 n.2 (original opinion).

[7] 219 S.W.2d 81 (Tex. Crim. App. 1949).

Loper claimed his conviction was "void for many reasons, all of which are matters that could have and should have been urged upon the trial of the Harris County case or upon an appeal therefrom. He failed to appeal such cause."[8]  For this reason, this Court denied relief.

In *Ex parte Pena*, the sentencing judge entered a judgment indicating a fine of $10,000 when the jury assessed no fine at all.[9]  Assuming that Pena raised a cognizable complaint, the Court held that he was not entitled to relief because he forfeited any error by not objecting at the time the $10,000 fine was imposed or by complaining on direct appeal.[10] The record in *Pena* established that Pena was informed that he had the option to appeal, or file a motion to reconsider the sentence, but he elected not to pursue those options.[11]  Citing *Ex parte Bagley*, the Court held that he was not entitled to relief "because he could have, and should have, complained about the fine at the time it was imposed or on direct appeal."[12]

Relying heavily on the axiom "The Great Writ should not be used in matters that should have been raised on appeal," *Ex parte Townsend* held that "[e]ven a constitutional claim is forfeited if the applicant had the opportunity to raise the issue on appeal.  This is because the writ of habeas corpus is an extraordinary remedy that is available only when

---

[8]  *Id.* at 82.

[9]  71 S.W.3d 336, 336 (Tex. Crim. App. 2002).

[10]  *Id.* at 338.

[11]  *Id.*

[12]  *Id.* at 338 & n.7 (citing *Ex parte Boyd*, 58 S.W.3d 134, 136 (Tex. Crim. App. 2001)).

there is no other adequate remedy at law."[13]  Most likely owing to its sweeping language, *Townsend* has been viewed as a defining point in our habeas jurisprudence, but it was hardly new:  If an applicant could have appealed the issue he now asserts on habeas, the merits of his claim should not be reviewed.

If *Townsend* requires that we ask "Could the applicant have brought his claim on appeal?" before reviewing a claim's merits, the answer turns on the nature of the right he seeks to vindicate.  If it was not preserved in the trial court, then the answer turns on whether the right that the applicant seeks to vindicate is subject to procedural default.  After all, if a particular right is not subject to procedural default, then the claim asserting a violation of that right can normally be raised in a direct appeal regardless of a contemporaneous objection.

## B.  Incorporation of *Marin v. State*

*Marin v. State*, the watershed decision on whether rights are subject to procedural default—and therefore whether Texas Rule of Appellate Procedure 33.1's general preservation requirement applies[14]—provides a ready categorization structure well ingrained in our criminal law.[15]  Whether an appellant must preserve error is controlled by where in

---

[13]  *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004) (citations omitted).  *Accord Ex parte Nelson*, 137 S.W.3d 666 (Tex. Crim. App. 2004).

[14]  TEX. R. APP. PRO. 33.1(a) (requiring that, as a prerequisite to presenting a complaint on appeal, the record show a complaint was made to the trial court alleging specific grounds for the objection that comply with the Rules of Evidence and that the trial court ruled, or refused to rule on, the objection).

[15]  *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App.1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997).

*Marin*'s three familiar categories a particular right falls:

- Category-one rights, considered absolute rights or prohibitions, cannot be avoided even with partisan consent. "Accordingly, any party entitled to appeal is authorized to complain that an absolute requirement or prohibition was violated, and the merits of his complaint on appeal are not affected by the existence of a waiver or a forfeiture at trial."[16]

- Category-two rights are those that are not forfeitable—they cannot be surrendered by mere inaction, but are waivable if the waiver is affirmatively, plainly, freely, and intelligently made. The trial judge has an independent duty to implement these rights absent any request unless there is an effective express waiver.[17]

- Category-three rights are forfeitable and must be requested by a defendant. Many defendants' rights, including constitutional rights, are in this category and can be forfeited by inaction.[18]

*Townsend*'s sweeping language, however, was broader than its aim. *Townsend* sought to cinch habeas corpus back to its original form. Returning to older precedents, *Townsend* reminded that "[h]abeas corpus is an extraordinary remedy; and, ordinarily, neither a trial court nor this Court, either in the exercise of our original or appellate jurisdiction, should entertain an application for writ of habeas corpus where there is an adequate remedy at law."[19] Traditionally, habeas corpus was available only to review jurisdictional defects or

---

[16] *Id.* at 280.

[17] *Id.* at 279–80.

[18] *Id.* at 279.

[19] *Ex parte Townsend*, 137 S.W.3d 79, 81 n.9 (quoting *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978).

denials of fundamental or constitutional rights.[20] By broadly framing the scope of habeas to exclude all claims that could have been raised on direct appeal, *Townsend*, when read literally, excludes from habeas review the most sacred, absolute rights and prohibitions—those that, according to *Marin*, are widely considered critical to the proper functioning of our adjudicatory process.

Clarification of *Townsend* is required lest we render habeas corpus a shell of its former self, incapable of rendering relief on claims asserting violations of the rights and prohibitions that pose the gravest threat to our system of justice. *Ex parte Moss* is a recent proof of the principle.[21] Moss challenged the trial court's jurisdiction in revoking her community supervision. After revocation, Moss absconded and her direct appeal was dismissed.[22] Moss's jurisdictional complaint came only in the form of her habeas corpus application. Noting that jurisdiction is a systemic requirement that operates independent of litigants' wishes, this Court held that the merits of Moss's claim could be entertained irrespective of *Townsend*'s broad holding.[23] *Ex parte Moss* adhered to *Townsend*'s intent to

---

[20] *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (internal citations omitted).

[21] *Ex parte Moss*, 446 S.W.3d 786, 788–89 (Tex. Crim. App. 2014).

[22] *Id.* at 788.

[23] *Id.* at 789. *See Sledge v. State*, 391 S.W.3d 104, 108 (Tex. Crim. App. 2013) ("[W]e have recognized them to be cognizable without regard to ordinary notions of procedural default—essentially because it is simply not optional with the parties to agree to confer subject matter jurisdiction on a convicting court where that jurisdiction is lacking.").

restore habeas to its original intended function: a remedy to address jurisdictional errors and other equally offensive errors in the adjudicatory process.

We ought to once more refine *Townsend*'s holding to further its efforts in preserving the original scope of habeas corpus and the importance of error preservation in deciding whether to evaluate the merits of an applicant's claim. Both ends are achieved by expressly incorporating *Marin*'s characterization of rights on appeal to determine whether a particular right is subject to procedural default and therefore will frustrate an applicant's request for relief. In view of the historical notions of habeas corpus, only claims involving bare *Marin* category-one rights and prohibitions should escape *Townsend*'s gatekeeping-like holding and receive merits review.

To be clear, this approach would not apply *Marin* to all habeas claims. In fact, an overwhelming majority of the writ applications this Court receives would be unaffected. *Marin* would not apply to claims that, in *Townsend*'s parlance, could not have been brought on appeal or are better suited for collateral proceedings. Put another way, procedural-default principles will only prevent the review of record claims and those that, by their nature, typically afford a litigant an adequate forum for relief. *Marin* and error-preservation issues are generally inapplicable to a number of cognizable claims on habeas, including actual innocence, ineffective assistance of counsel, *Brady* claims, and other claims that require or are based on subsequent record development.[24] The treatment of these types of claims

---

[24] *See, e.g.*, *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996) (focusing actual-innocence claims in light of new evidence); *Ex parte Nailor*, 149

remains untouched by such a holding.

## II. Double-Jeopardy Claims on Habeas

### A. The *Gonzalez v. State* exception

The double-jeopardy error-preservation body of law stands in sharp relief against *Marin*'s categorical structure and the preservation requirement of other rights. In *Gonzalez v. State*, this Court held Gonzalez had the burden to preserve his double-jeopardy complaint by objecting at or before the time the charge was submitted to the jury.[25] However, the *Gonzalez* Court allowed an exception: Because of the "fundamental" nature of double jeopardy, a double-jeopardy claim may be raised for the first time on appeal (and in dicta, on collateral attack) only when (1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of usual rules of procedural default serves no legitimate state interest.[26] We have recently relied on *Gonzalez*'s holding in granting a habeas applicant relief on a double-jeopardy claim that was ostensibly raised for the first time on habeas.[27]

---

S.W.3d 125, 130 (Tex. Crim. App. 2004) (acknowledging ineffective-assistance-of-counsel claims generally need an expanded record which is better accomplished on habeas); *Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005) (recognizing that a trial record's insufficiency may prohibit an appellate court from resolving a particular claim on direct appeal).

[25] *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).

[26] *Id.* at 643.

[27] *See, e.g.*, *Ex parte Denton*, 399 S.W.3d 540, 544–45 (Tex. Crim. App. 2013).

However, the *Gonzalez* holding has proved problematic, and our recent application of *Gonzalez* questions its continued viability. From the start, the two components of the contemporaneous-objection exception have never been clear. What does it mean to require that "the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record" and the "enforcement of usual rules of procedural default serves no legitimate state interest"? Except where a jury is instructed on separate theories for an offense in the disjunctive,[28] the clearly-apparent-from-the-record factor requires that we reach the merits of the claim before determining whether the claim is properly presented. Determining a threshold issue of procedure based on the claim's merits results in an analytical hiccup: If there is a valid double-jeopardy violation, it is sufficiently clear on the face of the record; if there is no double-jeopardy violation, it is not.[29] Without a majority opinion passing on the issue, the Court allows this anomaly to endure.

The *Gonzalez* exception's second prong—when enforcement of usual rules of procedural default serves no legitimate state interest—has recently become even less clear. In *Langs v. State*, we noted this prong was designed to ensure that the trial court and the State were not deprived of an opportunity to remove the basis of the objection, and to be in a worse position for the lack of a defendant's objection.[30] However, a more recent case casts this

---

[28] *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006).

[29] *See, e.g., Garfias v. State*, 424 S.W.3d 54, 64 (Tex. Crim. App. 2014); *Langs*, 183 S.W.3d at 688–89.

[30] *Langs*, 183 S.W.3d at 686, n.22. *See Gonzalez*, 8 S.W.3d at 645–46.

meaning in doubt. In *Ex parte Denton*, this Court held, "While the state may have an interest in maintaining the finality of a conviction, we perceive no legitimate interest in maintaining a conviction when it is clear on the face of the record that the conviction was obtained in contravention of constitutional double-jeopardy protections."[31] Judge Richardson's concurring opinion claims *Denton* did not drain this prong of all meaning.[32] Yet, like in *Denton*, he would summarily find *Gonzalez*'s second prong satisfied.[33] Without any discussion, the two bare conclusions are irreconcilable. Judge Richardson disclaims *Gonzalez*'s erosion while at once attempting to solidifying it.

Aside from the *Gonzalez* exception's analytical uncertainty and inconsistent application, the express incorporation of *Marin*'s framework calls *Gonzalez*'s rationale and holding further into doubt because it is premised on double-jeopardy's "fundamental" nature—nomenclature that does not conform to *Marin*'s categories or application. Indeed, *Marin* itself initially spoke in terms of fundamental rights. Yet it did so to differentiate rights that are forfeited by inaction and those that carry special significance, only to further distill them into waivable-only rights and absolute rights and prohibitions.[34] *Marin* was a reaction to the frequent labeling of errors as "fundamental" that were immune from procedural

---

[31] *Ex parte Denton*, 399 S.W.3d at 545.

[32] *Post*, at 10 (Richardson, J., concurring).

[33] *Id.*

[34] *Marin*, 851 S.W.2d at 278–79.

default. At the time of the *Marin* decision, this Court recognized more than a dozen kinds of fundamental error.[35] Indiscriminate use of "fundamental errors" led to "piecemeal developments that each ha[d] somewhat different rationales. The overall situation, then, simply could not be explained by reference to any unifying principle or principles."[36]

*Gonzalez*'s rationale that in some instances double-jeopardy claims avoid procedural default because double jeopardy is fundamental does not adequately support that holding. Without further reducing double-jeopardy protections into an absolute right or prohibition or a waiver-only right, the *Gonzalez* exception is a holding with incomplete reasoning. As a result, *Gonzalez*'s treatment of double jeopardy is anomalous—it is a claim that must be preserved, yet may still be reviewed in limited circumstances. *Gonzalez*'s holdings are logically flawed, difficult to implement, irreconcilable with our procedural-default rules, and inapposite to *Marin*'s goal of achieving unified procedural-default rules. We should overrule it.

## B. Categorizing double jeopardy under *Marin*

Placing a defendant's double-jeopardy rights into a *Marin* category accomplishes two things: (1) it determines if an objection is required in the trial court in the first place, and (2) if not, it then determines whether an effective waiver is required. This is admittedly no easy task; it requires taking a holistic approach that considers the nature of the rights' importance

---

[35] *Sanchez v. State*, 120 S.W.3d 359, 365 (Tex. Crim. App. 2003).

[36] *Id.*; *Saldano v. State*, 70 S.W.3d 873, 887–88 (Tex. Crim. App. 2002).

in our judicial system and preserves the rights' potency.

Double-jeopardy rights fall outside of *Marin*'s first category because they may be waived, and therefore they cannot be absolute rights or prohibitions by definition. We have previously held that a defendant may affirmatively waive his right to the Fifth Amendment's double-jeopardy protections.[37] While a guilty plea alone does not waive a defendant's double-jeopardy rights, the record of a proceeding may indicate that a defendant may effectuate a waiver by agreeing to subject himself to double jeopardy if it benefits him.[38] In *Ex parte Birdwell*, we held "that the applicant agreed to subject himself to a second trial for the same offense, and to receive a lesser sen tence which he had already earned enough credit to have discharged."[39] Because there are some instances when double-jeopardy rights may be waived, they cannot be placed in *Marin*'s first category.

Further, finding that double jeopardy is an absolute right or prohibition would stifle the ability of the State and a defendant to engage in free negotiation to arrive at mutually beneficial resolutions of criminal cases. If a defendant chooses to subject himself to a

---

[37] *Ex parte Birdwell*, 7 S.W.3d 160 (Tex. Crim. App. 1999) (holding that applicant waived his double-jeopardy right to be free from a second prosecution because the record of this proceeding shows that the applicant agreed to subject himself to a second trial for the same offense); *Ex parte McJunkins*, 954 S.W.2d 39, 41 (Tex. Crim. App. 1997).

[38] *Ex parte Birdwell*, 7 S.W.3d at 163–64 (citing *Menna v. New York*, 423 U.S. 61, 63 n.2 (1975) and *United States v. Broce*, 488 U.S. 563, 575 (1989)).

[39] *Id.* at 164. *See Jeffers v. United States*, 432 U.S. 137, 153 (1977) (holding that Jeffer's affirmative request for separate trials "deprived him of any right that he might have had against consecutive trials.").

potential double-jeopardy violation because, in his judgment, it results in a beneficial outcome of a pending case instead of standing on his double-jeopardy rights, he should be free to do so.[40]  In a negotiated plea bargain, a defendant already expressly gives up a whole host of rights, including the right to a jury trial, the right to require the State to prove guilt beyond a reasonable doubt, the right to confront and cross-examine witnesses against the defendant, and in certain cases, the right to be sentenced by a judge considering the entire range of punishment.[41]  It makes little sense to elevate double-jeopardy rights to a station so sacrosanct that the defendant himself—and for whom those rights exist—may not intentionally forego them.

The nature of double-jeopardy protections leads me to conclude that they are best suited as category-two *Marin* rights.  Although *Gonzalez*'s use of the term fundamental in describing double jeopardy was overly broad, it correctly recognized double-jeopardy protections as substantively different from other rights extinguished by mere inaction.  The United States Supreme Court has consistently noted that, with its foundation in common law, double-jeopardy rights are deeply ingrained in our system of jurisprudence.  It is well established that "the State with all its resources and power should not be allowed to make

---

[40]  *See Ex parte Birdwell*, 7 S.W.3d at 160 (holding that applicant waived his double-jeopardy right to be free from a second prosecution because the record of the proceeding shows that the applicant agreed to subject himself to a second trial for the same offense).

[41]  *Grado v. State*, 445 S.W.3d 736, 740 (Tex. Crim. App. 2014).  *See Mendez v. State*, 138 S.W.3d 334, 344 (Tex. Crim. App. 2004).

repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."[42]  The Supreme Court continued, "Like the right to trial by jury, it is clearly 'fundamental to the American scheme of justice.'"[43] And the ability to waive a trial by jury is equally established:

> [A]n accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel. There is nothing in the Constitution to prevent an accused from choosing to have his fate tried before a judge without a jury even though, in deciding what is best for himself, he follows the guidance of his own wisdom and not that of a lawyer.[44]

Although double-jeopardy rights are prominent fixtures within our criminal-justice system, they are not barriers.  Placing double jeopardy within *Marin*'s second category strikes the right balance consistent with their nature.  Not simply extinguished by inaction or inattention, double-jeopardy rights must be affirmatively waived.  This categorization preserves double-jeopardy rights' ability to provide individual protections while at the same time permitting a defendant to relinquish them if he so chooses.  Placing double-jeopardy rights within *Marin*'s second category further ensures that defendants in the trial court will always have

---

[42]  *Benton v. Maryland*, 395 U.S. 784, 796 (1969) (quoting *Green v. United States*, 355 U.S. 184, 187–88 (1957)).

[43]  *Id.*

[44]  *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275 (1942).

a forum to vindicate alleged double-jeopardy violations. By holding that double-jeopardy rights are immune to procedural default, double-jeopardy claims will always be available on appeal in the absence of an express waiver regardless of whether trial counsel preserves for appeal a double-jeopardy complainant. This approach forecloses these claims on habeas, but the ability to seek relief in the appellate courts far exceeds any potential relief after the appellate process has come and gone.

### III. Conclusion

The general rule espoused by *Townsend* (and many other opinions before it) remains the same: If an applicant could have brought a claim on direct appeal, then the claim's merits will not be entertained on habeas. A bare or primary violation of a category-one *Marin* absolute right or prohibition should be the only exception to *Townsend*. This is contrasted by secondary claims of constitutional right violations raised by way of another right, for example instances of ineffective-assistance-of-counsel claims. Failure to exercise this available right to appeal should prove fatal to freestanding double-jeopardy claims on collateral review.

Because double-jeopardy claims are category-two waiver-only claims and the present record does not contain an effective double-jeopardy waiver, Marascio's double-jeopardy claims could have been raised on direct appeal and do not satisfy the exception to *Townsend*'s general rule. For these reasons, I concur in denying Marascio's applications for writ of habeas corpus.

DELIVERED: October 7, 2015

PUBLISH